(Decided 9th February, 1884.)

---

ELIAS LIVEZY vs. ANDREW J. MILLER.

*Prayers and Instructions to the Jury—Practice in the Court of Appeals—Broker's Commissions.*

If the evidence warrants another view than that presented by the plaintiff's instruction, and the defendant is entitled to have that view presented in a separate instruction, it is proper to conjoin the two views in one instruction, as the converse of each other, or as in any way qualifying the one or the other, and instructing the jury to find accordingly, as they may find the facts respectively to be.

Where the point does not appear to have been presented in the Court below, that there was no legally sufficient evidence from which a jury might find certain facts assumed in the instruction of the Court below, this Court is bound by its rules to suppose and assume that there was evidence of those facts legally sufficient to justify instructing the jury about them, although there be no such evidence in the record.

A real estate broker is entitled to his commissions if the sale be effected through his instrumentality; but if the negotiations which he has set on foot are completely broken off by disagreement as to the price, and the property is afterward sold to the same party by another broker on the same terms as originally offered, except a modification of a hundred dollars more per annum for the lease taken by the owner from the purchaser, the first broker is not entitled to commissions.

APPEAL from the Superior Court of Baltimore City.

The case is stated in the opinion of the Court.

*Exception.*—At the trial the plaintiff asked the two following instructions:

1. That if the jury believe, from the evidence, that the plaintiff, as a real estate broker, was employed by the defendant to procure a purchaser for the property referred to, and that in pursuance of such employment, the plaintiff brought said property to the attention of a certain Stayman, gave him all proper and necessary information in regard to it, urged upon him considerations to induce him to buy, and got him to inspect said property, and at the time introduced him to defendant, disclosing his name, as a customer produced by him, the plaintiff, and shall further find, that a sale of said property was made to said Stayman, (or to some one for whom he was acting,) on terms satisfactory to defendant, and that what the plaintiff did was the foundation on which negotiations were begun, and said sale ultimately made, then the plaintiff is entitled to recover.

2. If the jury find for the plaintiff, then he is entitled to recover such amount of commissions as they may find from the evidence it is usual and customary to pay to brokers in Baltimore City for procuring a purchaser for property of similar character and value, unless they find from the evidence that a different compensation was agreed upon by plaintiff and defendant.

And the defendant offered six prayers, of which the sixth was as follows:

6. If the jury find from the evidence that the defendant agreed to pay to the plaintiff, for a sale of the property on N. Howard street, two and a half per cent. commissions only, on the price which the said property might be sold for over and above the two mortgages on said property, and that said mortgages aggregated fifteen thousand dollars, and that said property was sold for twenty-five thousand dollars, being ten thousand dollars in excess of said mortgages, then in case they find a verdict for the plaintiff, it can only be for commissions on ten thousand dollars.

The Court (Brown, J.,) rejected all the prayers offered, except the defendant's sixth prayer, which was granted, and gave an instruction of its own, which is set out in the opinion of this Court.

The plaintiff excepted, and the verdict and judgment being against him, he appealed.

The cause was argued before Alvey, C. J., Yellott, Miller, Robinson, Irving, and Bryan, J.

*Edward J. Clark,* and *Albert Ritchie,* for the appellant.

*William J. O'Brien,* for the appellee.

Irving, J., delivered the opinion of the Court.

This was a suit to recover broker's commissions for the sale of two houses on Howard street, Baltimore, one of

which was under a lease, and the other occupied by the owner, who is the appellee. It appears from the record, that about three years before the sale was effected the property was placed, for sale, in the hands of two brokers, the appellant and John K. White, each of whom was operating independently, and on his own behalf. Toward the last of February, 1882, Dr. Stayman (who was acting on behalf of Mrs. Stayman) was introduced to the appellee by the appellant. The price asked of Dr. Stayman was twenty-five thousand dollars, (clear of two mortgages amounting to fifteen thousand dollars,) with a lease, to the seller, of one of the houses for five years at eleven hundred dollars a year. Dr. Stayman said he thought twenty thousand was all the property was worth, and, through his brother, Professor Stayman, offered that amount. This was positively rejected, with the statement that it was not as good an offer as had been made by Mr. W. W. Spence, (which offer from Mr. Spence was $23,500 and a lease at $1800 per annum, and had been procured by the agency of the appellant.) The plaintiff testifies that subsequent to the rejection of the Stayman offer, he had several interviews with the Staymans, and the matter was left undetermined. The defendant testifies that when he rejected Prof. Stayman's offer, he asked him if that closed the negotiation, and that Stayman replied, "Yes." On this point, Dr. Stayman testifies, that when the offer of twenty thousand dollars, which was made by his brother, was "indignantly" rejected, with the statement that he had been offered much more by Mr. Spence, he thought the whole property was dropped; and that, after this, negotiation was wholly and entirely abandoned; and "he, in his own mind, abandoned all idea of buying the property." He states that he got his brother to help him hunt up an investment for his wife, because he was out of health.

Mr. John K. White testifies, that this property was placed in his hands about two or three years before the

sale was effected; that on the 12th or 13th of March, 1882, Mr. McSherry, (who was attorney for Mrs. Stayman,) called on him and said he had thirty thousand dollars to invest, and asked what property he had in his hands. Amongst other property, he mentioned the appellee's property. McSherry then told him this property had been rejected. Witness asked McSherry at what price it had been rejected, and was told $25,000, and a lease upon one house, which appellee wanted, at $1100 per annum. Witness said to McSherry, that he thought Miller would lease at $1200, whereupon he was directed to see him. He called on Miller and informed him of what had passed between himself and McSherry, and Miller agreed to take a lease at $1200 per annum. Miller then fixed his terms and told White what commissions he would pay him. On the 17th of March, White was authorized by Stayman to offer twenty-five thousand dollars for the property, and Miller to take a lease on one house for $1200 per annum, payable monthly; property to be unencumbered, and lease to run five years. White addressed a note to Miller stating that he was authorized by Dr. Stayman to offer to take the property on these last stated terms. The offer was accepted by Miller, and the matter was closed by the execution of a deed on the 27th of same month. McSherry testified that, having been asked by Mrs. Stayman's son to look up an investment for his mother, he called on Gilmor Hoffman and inquired for property, who told him of the Miller property on Howard street, which was the first knowledge he had of that property being for sale. Hoffman told witness it was in Livezy's hands, and that he (Hoffman) was co-operating with him. Witness reported this property to the Staymans, and learned that they had already declined to take that property at the price asked for it. Subsequently he had several interviews with Hoffman about the property, in one of which he asked what part of the commissions would be allowed to him, if he

effected a sale. What reply was made is not stated. Witness afterwards saw White and asked him what property he had. With other property, White mentioned this Miller property, and the terms. Witness told him that property had been rejected. White suggested that he thought Miller would agree to accept a lease at $1200 per annum for five years. Witness then instructed White to learn if he would do so. He did inquire, and the negotiations resulted as stated by White. Witness received a part of White's commissions.

Upon this proof plaintiff and defendant offered prayers, all of which were rejected, except defendant's sixth prayer, which was granted, limiting plaintiff's recovery to two and one-half per cent. commissions on ten thousand dollars net value of property, (after deducting the mortgages,) in case of a verdict for plaintiff. And in lieu of all the other instructions offered by either side, the Court granted the following instruction : " If the jury shall find that the plaintiff was employed by the defendant to make sale of his property on Howard street, in the city of Baltimore, and that the plaintiff called the attention of the witness, Stayman, to said property, and then informed the defendant that he had done so, and put Stayman and the defendant in communication about it, and that the property was sold to Stayman by the defendant afterwards, the plaintiff is entitled to receive such commissions as may have been agreed upon between the plaintiff and defendant ; if the jury find that any agreement was made as to the amount of commissions, or such commissions as the jury may believe to be reasonable for the services, if the jury find there was no agreement as to their amount ; provided, the jury further find, that the disclosure of the name of Stayman and the putting of him in communication with the defendant by the plaintiff was the foundation upon which the negotiation was conducted, and the sale made. But if, on the other hand, they find that the

negotiation between the defendant and Stayman, growing out of such disclosure by the plaintiff, was brought to an end, and (*bona fide*) abandoned by Stayman and defendant, and that afterwards the defendant sold the property through one White, as a broker, to the agent of Stayman, · and did not know until after the memorandum of the sale had been executed by White, as his agent, that Stayman was the principal of the purchasing agent, and that the witness, Stayman, was induced to begin and conduct a new negotiation for the purchase of the property, entirely through the suggestions or influence of his said agent, or White, and that the defendant paid commissions to said White, then the plaintiff is not entitled to recover."

This instruction, in substance, embodies all that was asked for by the plaintiff's first instruction, but combines with it the view of the case presented by the evidence respecting the cessation of negotiations between Stayman and Miller, and the abandonment of all idea by Stayman to purchase after the rejection of his offer, until he was induced to reconsider, by the intervention of McSherry and White; which evidence the plaintiff's prayer wholly ignored.

The appellant complains of this addition, and insists that, as a matter of law, the evidence did not warrant the putting of the question of abandonment of the negotiation with and by Stayman and Miller to the jury; and in any event, that it was misleading, not to grant the plaintiff's prayer, as presenting, by itself, the legal conclusion which must follow from the finding the facts it recited, and as presented in the plaintiff's evidence. If the evidence warranted another view, and the defendant was entitled to have that view presented in a separate instruction, there certainly can be no error in conjoining the two views in one instruction as the converse of each other, or as in any way qualifying the one or the other and instructing the jury to find accordingly, as they might find the facts re-

spectively to be.   So far from embarrassing or misleading the jury, it was calculated to bring the whole matter for their consideration more clearly before them, and insure a clearer apprehension of the subject for decision.   The point does not appear to have been made in the Circuit Court, that there was no legally sufficient evidence from which a jury might find abandonment of the matter by Stayman before the intervention of McSherry and White, or of the agency of White and McSherry respectively for the parties; both which facts are assumed in the Court's instruction; and if there was no such evidence in the record, by our rules we would be bound to suppose and assume that there was evidence legally sufficient of those facts to justify instructing the jury about them; but there is some evidence of each of those facts.   Stayman expressly states that he had abandoned all idea of buying the property after the rejection of his offer, till the subject was again brought up by McSherry and White; and they each testify to their agency respectively.

It is well settled by the authorities generally, and in this State, that a broker is entitled to his commissions if the sale effected can be referred to his instrumentality.   It is also the established law that, after negotiations, begun through a broker's intervention, have virtually culminated in a sale, the agent cannot be discharged, so as to deprive him of his commissions.   If the agent is the *procuring cause* of the sale made, he will be awarded his commissions.   *Keener vs. Harrod, et al.,* 2 *Md.,* 63; *Tinges vs. Moale,* 25 *Md.,* 480; *Jones vs. Adler,* 34 *Md.,* 440; and *Attrill vs. Patterson,* 58 *Md.,* 226.   The ruling in this case does no violence to these principles, and is in harmony with the authorities cited.   There were confessedly two brokers entrusted with the sale of the property by Miller.  Neither had exclusive authority.   Each has negotiated with the same person, who ultimately buys.   The terms first offered through the plaintiff were not accepted; and

the offer made by Stayman was rejected; and there is evidence tending to show entire abandonment of the idea of investment in that property, until negotiations were renewed by the instrumentality of McSherry and White; after which the property was sold on the same terms as originally offered, except the modification of one hundred dollars more per annum for the lease taken by Miller for five years from the purchaser. The whole question whether the sale was really effected in consequence of what plaintiff did in first bringing the parties into negotiation, or whether the negotiations through him were *bona fide* broken off, and abandoned by Stayman, and the sale finally effected wholly through the influence of others, was, we think, fairly presented to the jury; and as their verdict was for the defendant, we are relieved of the necessity of considering whether there was error in granting the defendant's sixth prayer, which was only important, if they found for the plaintiff on the proof, in regulating the amount of compensation to be awarded. There being no error in the instruction granted by the Court, which covered the whole case, the judgment will be affirmed.

*Judgment affirmed.*

(Decided 21st February, 1884.)