## MAYER WARSHAWSKY et al. *v.* JULIUS TRAUB.

[No. 100, October Term, 1928.]

*Decided February 27th, 1929.*

The cause was argued before Bond, C. J., Adkins, Offutt, Digges, and Parke, JJ.

598

*Joseph Loeffler,* with whom were *Benjamin L. Berman, Saul R. Levinson,* and *Harry S. Kruger* on the brief, for the appellants.

*Sydney R. Traub,* with whom was *Allen A. Davis* on the brief, for the appellee.

DIGGES, J., delivered the opinion of the Court.

The question presented on this appeal is whether or not the appellee is entitled as a real estate broker to commissions on the sale of the appellants' property made to Abraham Flegle and Dora Flegle, his wife. There are two exceptions contained in the record, one to the action of the court in excluding testimony as to declarations made by a third party to one of the defendants out of the presence of the plaintiff. This exception appears to have been abandoned by the appellants, as no mention was made thereof either in the brief or oral argument on their behalf; but if this exception was not abandoned, there can be no doubt that the ruling excepted to was correct, the testimony rejected being clearly hearsay.

The other exception is to the action of the court on the prayers. The plaintiff (appellee) offered one prayer, and the defendants (appellants) seven prayers. The plaintiff's prayer was granted, as were all of the defendants' prayers with the exception of their first, 1-A, and fourth, which were rejected. The defendants, therefore, by their second exception raise the question of the correctness of the court's action in granting the plaintiff's first prayer and rejecting the defendants' prayers as above set forth.

The declaration contained the common counts, and an additional count wherein it was alleged: "That the defendants, in the month of April, 1927, then and there authorized and employed the plaintiff, who was, and has been for a long period of time, a duly licensed real estate broker in Baltimore City, to procure a purchaser of their grocery business and leasehold property located at No. 1815 Clifton Avenue, Baltimore City, and the defendants then and there promised and agreed to pay unto the said plaintiff the usual and customary

commission for making said sale; and that, in pursuance of the said contract of employment, and, as a result of the efforts and labors of the plaintiff in behalf of the said defendants, the plaintiff procured, as purchasers of the said business and property, one Abraham Flegle and Dora Flegle, his wife; and that the said defendants, on July 26th, 1927, sold the said business and property to the said Abraham and Dora Flegle, his wife, for the sum of ten thousand two hundred fifty dollars ($10,250), and have received the purchase price therefor; and that, thereupon, there became, and now is, due and payable to the plaintiff, by the defendants, the aforesaid commission at the rate of ten per cent. on the first $1,000 and five per cent. on the balance (going business) of the said purchase price of ten thousand two hundred fifty dollars ($10,250), or a total sum of five hundred sixty-two dollars fifty cents ($562.50), but the said defendants have refused to pay the said sum, although demand has been made therefor. And the plaintiff claims seven hundred fifty dollars ($750)."

It is unnecessary to set out the evidence as contained in the record, further than to state that there is evidence tending to show that the plaintiff is a real estate broker; that he was employed by the defendants in April, 1927, to make sale of the defendants' property located in Baltimore, known as 1815 Clifton Avenue; that pursuant to said employment, the plaintiff, knowing or discovering that the Flegles desired to purchase property similar to that owned by the defendant, informed them that he had the defendants' property for sale, and took Abraham Flegle to inspect the property and introduced him to the defendants; that Flegle did inspect the property and inquired the price, and was informed by the plaintiff that the price placed upon the property by the defendants was $12,000; that the property consisted of leasehold property subject to an annual ground rent of $60, and a grocery business conducted in the front of the building located upon the property, together with the stock in trade and good-will; that Flegle said he liked the property but that the price was too large; that the plaintiff took

at least one other party to see the property; that some time in July, 1927, another broker, by the name of Sahm, approached Flegle to buy the same property, and was told by Flegle that he knew the property and that it had been shown to him by the plaintiff, but that the price was more than he would pay, whereupon Sahm told the purchaser to go with him to the property, and that it could be bought for a less sum; that Flegle and his wife did go with Sahm to 1815 Clifton Avenue, and at that time Mrs. Warshawsky, one of the defendants, recognized Flegle and asked if he had not been there before with the plaintiff, the testimony of Flegle in this respect being: "Q. When you went in there did Mrs. Warshawsky say anything to you about having seen it before? A. Yes, sir. Q. What? A. She said, 'You were here with Mr. Traub before'; I said, 'Yes, I was here with Mr. Traub'; she said, 'What are you going to do when Mr. Traub comes for commission, for his commission'; I said, 'You will pay him'; she said, 'All right'; then I bought it. The Court: Was Mr. Sahm present when you told him that or told her that? A. Yes, sir; he heard it, if I am not mistaken Mr. Sherry was there. Q. Did you buy the whole thing as a lump sum, or anything for the business? A. We figure $7,000 for the property subject to $1,000 ground rent and $3,000 for the business." That at this interview between the Flegles and the appellants the Flegles offered $10,000 for the property, and after some bargaining the sale was made for a price of $10,200; that a discussion then ensued as to the compensation of Sahm, the second broker, and it was agreed that the Flegles would add an additional $50 to the purchase price, which, together with $25 paid by the appellants, making $75 in all, would be paid to Sahm for his services; that after reaching this agreement an attorney was called, who prepared the contract, and it was executed by the parties on that day; that subsequently the deed was executed and delivered to the Flegles and a settlement made for the property; that the customary and usual commissions applicable in Baltimore City for the sale of leasehold property are four per cent. on the first $7,500 and two and one-

half per cent. on any balance, and on business personal property ten per cent. on the first $1,000 and five per cent. on the balance.

The objection urged by the appellants to the plaintiff's first prayer, which was granted, is that it did not take into consideration evidence on the part of the defendants that the plaintiff had been discharged or that his agency to sell had been revoked shortly after the employment; or, in other words, that the prayer instructed the jury that the plaintiff could recover if they found the facts set out in the prayer, but omitted to submit to the jury the question of whether or not the agency of the plaintiff had been properly revoked. We find no evidence in the record legally sufficient for the jury to deny recovery to the plaintiff on the ground that he had been in good faith discharged before the sale was consumated. It is clear that the case was tried below by the defendants on the theory that the plaintiff had not been employed by them to make sale of the property and was not the procuring cause thereof. The testimony now relied on, upon which it is claimed the jury were entitled to find the termination of the agency, was given by the defendants in an effort to show that no authority was ever given to the plaintiff to sell the property. A revocation of agency presupposes its existence, and testimony given which denies and is intended to show that the plaintiff was never employed as agent, cannot properly be held to be evidence of discharge, especially when there is no indication disclosed by the record that such a defence was made or relied upon in the trial court. Without quoting this testimony, suffice it to say that, in our opinion, it was referrable to the establishment of the agency, and not to its revocation, and there was no evidence upon which the fact of discharge could be properly submitted to the jury.

The defendants' first prayer and 1-A prayer both withdraw the case from the jury, or instruct a verdict for the defendants, and were properly rejected, there being evidence proper for the jury to consider entitling the plaintiff to recover if believed by them. If the defendants' 1-A prayer

had been so drawn as to limit the plaintiff's recovery to what the evidence showed was the usual and customary commission for making such sale, it would have been a proper prayer, because undoubtedly the only evidence on that point, and which was produced by the plaintiff, showed that in Baltimore City the rule is to allow different rates of commission on real and leasehold property from that allowed on the sale of personal chattels or business, and that the commission allowed on the sale of real and leasehold property is four per cent. on the first $7,500 and two and one-half per cent. on the balance, whereas the plaintiff in his declaration claims, and the jury allowed, ten per cent. on the first $1,000 and five per cent. on the remainder of the whole purchase price; but, as offered, this prayer asked the court to instruct a verdict for the defendants, and was therefore properly refused. We do not find that the case of *Hoke v. Wood*, 26 Md. 453, cited by the appellants, is controlling. The contract in this case was that the defendants would pay the usual and customary commissions for making such a sale, and the fact that it was alleged that such commissions were larger than those in fact usual and customary, would not prevent a recovery of such an amount as the jury believed from the evidence constituted the usual and customary commissions, with the limitation that the recovery could not exceed the amount claimed in the declaration. Any other construction would mean that, unless a plaintiff suing for the value of services was able to prove the services to be worth precisely what he alleged, he would be precluded from any recovery whatever.

The defendants' fourth prayer, which was rejected, is as follows: "The court instructs the jury that even though the purchaser was introduced to the defendants as a prospective buyer of the real and personal property mentioned in the evidence, the plaintiff is not entitled to recover if they find from the evidence that the sale was finally consummated through the subsequent and independent efforts and negotiations of another broker." The legal proposition contained in this prayer is that a real estate broker is not entitled to

his commission if he himself does not consummate the sale. Such a proposition is not a correct statement of the law applicable to these cases. The consummation of a sale through subsequent and independent efforts of the owners, or another broker, does not deprive the plaintiff of his right to commissions, if his efforts were the proximate and procuring cause of the sale. In the case of *Buchholz v. Gorsuch*, 144 Md. 62, this court, speaking through Judge Urner, said: "It is not disputed that the evidence, while in conflict, would have justified the submission to the jury of the question as to the appellee's employment by the appellants to sell their property, and the uncontradicted testimony proves that the appellants, upon terms satisfactory to themselves, accepted as purchasers, and validly contracted with, the persons who had become interested in the property at the appellee's instance. But it is contended that the evidence is not legally sufficient to show that the appellee 'procured' the purchaser within the intent of the law. That prerequisite to recovery is satisfied if the testimony admits of the inference that the sale was accomplished as a result of the appellee's action in discovering the purchasers, showing them the property, and referring them to the appellants for further negotiations. The fact that the sale was effected by direct agreement of the vendors and vendees does not disentitle the appellee to commissions if his efforts may fairly be regarded as the procuring cause of that result. Such a question is ordinarily left to the jury for decision. It is not to be withdrawn from their consideration unless the evidence admits of no reasonable inference that the agreement of sale was the result of the broker's service. The principles we have stated have been repeatedly applied by this court. *Keener v. Harrod*, 2 Md. 63; *Jones v. Adler*, 34 Md. 440; *Blake v. Slump*, 73 Md. 160; *Walker v. Baldwin*, 106 Md. 634; *Martien v. Baltimore*, 109 Md. 20; *Way v. Turner*, 127 Md. 327; *North Ave. Casino Co. v. Ferguson*, 130 Md. 376; *Balto. Car Wheel Co. v. Clark*, 131 Md. 513; *Wieghardt v. Wagner*, 140 Md. 188; *Taft v. Bayne*, 140 Md. 683."

In *Livezy v. Miller,* 61 Md. 343, this court said: "It is well settled by the authorities generally, and in this state, that a broker is entitled to his commissions if the sale effected can be referred to his instrumentality. It is also the established law that, after negotiations, begun through a broker's intervention, have virtually culminated in a sale, the agent cannot be discharged, so as to deprive him of his commissions. If the agent is the procuring cause of the sale made, he will be awarded his commissions." A general statement of the law is to be found in 4 *R. C. L.* 319, where it is said: "If the success of the transaction is directly attributable to the broker originally employed, his right to his commissions cannot be defeated by the mere fact that the negotiations were conducted, or the transaction finally consummated, through the medium of another broker, even though the terms of the first negotiations may have been varied. Where a prospective purchaser has been introduced to the owner by one broker and the negotiations are pending and have not fallen through, the owner cannot, with knowledge of the facts, complete the purchase with another agent, and avoid his liability for the commission due to the first broker. Thus the law will not permit one broker who has been intrusted with the sale of land, and is working with a customer whom he has found, to be deprived of his commission by another agent stepping in and selling to the customer for a price less than the first broker is empowered to receive."

We find no error in the rulings of the lower court, and the judgment must be affirmed.

*Judgment affirmed, with costs to the appellee.*