## WILLIAM MAYHEW *v.* HELEN MEEHAN

[No. 33, April Term, 1939.]

*Decided May 17th, 1939.*

The cause was argued before BOND, C. J., OFFUTT, MITCHELL, SHEHAN, JOHNSON, and DELAPLAINE, JJ.

*Donald L. Burns,* for the appellant.

*J. Gilbert Prendergast* and *Roszel C. Thomsen,* with whom was *Walter L. Clark* on the brief, for the appellee.

JOHNSON, J., delivered the opinion of the Court.

Alleging that under a general contract with William Mayhew, also known as Billy Mayhew, she was authorized to conduct negotiations for publication of the song, "It's A Sin To Tell A Lie," previously written by him, the profits from which sale, should she be successful in her undertaking, to be equally divided between Mayhew and herself, and that she had in fact succeeded in interesting certain publishers in the song in question, one of whom, Donaldson, Douglas & Gumble, Inc., as a result of her efforts, finally accepted and published the song, Helen Meehan filed her bill of complaint in the Circuit Court of Baltimore City against Mayhew, praying for: (1) An accounting and disclosure by him of the terms of the agreement between him and the publishers; (2) payment to her of fifty per cent. of all royalties received by him from such publication; (3) the appointment of a receiver, and (4) an injunction.

The defendant answered the bill of complaint and denied its material allegations, and the cause finally came on for hearing in open court before the chancellor, whose findings of fact are set forth in an opinion filed by him, to the effect that there existed between appellant and appellee a general contract, by which she was authorized to negotiate for publication of the song, and that Miss Meehan was the procuring cause of its publication.

Accordingly, he decreed that Mayhew (a) discover and disclose to appellee the terms of the agreement entered into between him and Donaldson, Douglas & Gumble, Inc.,

for publishing and marketing the song; (b) for an accounting to appellee of all monies received from the publisher under the contract; (c) for payment by appellant to appellee of fifty per cent. of all royalties and emoluments received thereunder; (d) appointed receivers to collect and hold such monies, as well as those to become due in the future, to Mayhew under the contract, and (e) enjoined Mayhew from collecting from the publishers any further royalties from its sale. From that decree the present appeal is taken.

It is apparent from what has been said that the correctness of the decree appealed from is dependent entirely upon facts, and reference to these will now be made.

Mayhew composed and wrote the song, "It's A Sin To Tell A Lie," and prior to June, 1935, had the same copyrighted. On January 14th, 1936, he entered into a contract for its publication with Donaldson, Douglas & Gumble, Inc., music publishers, located at 1595 Broadway, New York City.

Helen Meehan is employed by S. S. Kresge Company in Baltimore in the music department as a buyer of sheet music, and has held that position for more than eighteen years. In June, 1935, Mayhew, who had previously been unable to interest any music house in the publication of his composition, appeared at the music department of the S. S. Kresge Company store, Baltimore, and handed Miss Meehan the manuscript of "It's A Sin To Tell A Lie", stating that, although he had written it several years before, he had not been able to do anything with it. Miss Meehan suggested that she might be able to assist in arranging for its publication through Irving Berlin, whereupon Mayhew told her that he would go "fifty-fifty" if there was anything she could do in that respect. To this she assented and Mayhew left the store after first giving her the manuscript.

In the course of Miss Meehan's work she meets many representatives of music houses, and from them buys sheet music for sale to her employer's customers, and

she stated that when those representatives came through, in addition to selling songs, they often tried to pick up new songs; that, at the time of her arrangement with Mayhew, the next representatives she was expecting from music houses were Mr. Dion from Irving Berlin and Miss Kalan from Morris Richmond, and this was why she mentioned the Irving Berlin house to Mayhew. In June or early in July of the same year, Mr. Dion called and took back to New York to Irving Berlin the song in question, but returned it in the following September, with the comment that while it was a pretty song, Berlin could not at that time do anything with it. Up to this point there is no substantial dispute between her version and that of Mayhew. We say no substantial dispute, because Mayhew admits telling Miss Meehan that if Berlin printed the number, he would "take care" of her. However, he contends that his arrangement with her applied if, and only if, Irving Berlin published the song. He further stated that Miss Meehan had told him it would be unnecessary for him to take care of her, because, if it were published by Berlin, she would receive from the publisher one-half cent per copy. This she denied, and testified that no publishers gave one-half cent per copy to those who found songs for them, and since other witnesses who were available could have contradicted this evidence, had any such custom existed, Mayhew's version of this incident cannot be accepted.

Miss Meehan also testified that after the song had been returned to her by the Irving Berlin representative, she explained the situation to Mayhew, who stated, "Well, if you want to keep it and try again, it is all right with me"; that she not only kept it, but continued her efforts to have it published, and first called an ex-music man, Mr. Thuman, and attempted to interest him in having the song published; that he took the manuscript, but never returned it to her.

In December she had an opportunity to contact Miss Kalan of Morris Richmond's Company and spoke to her about the Mayhew song. She also played it for her and

Miss Kalan seemed very much interested in it, but since appellee did not have the manuscript, she could not supply it to her, but promised to send it within two weeks, provided she could secure it. A few days later Richard J. Powers, representing the American Society of Composers, Authors and Publishers, visited Miss Meehan, stating that Donaldson Douglas & Gumble, Inc., had written him to the effect that Miss Kalan had informed them she (Miss Meehan) had the manuscript of the song which had been played for Miss Kalan, and the publishers wished him to secure it. Not having the manuscript at that time and being unable to leave the store during business hours, Miss Meehan, fearing Powers might lose interest, suggested to him that he call Mayhew, and thereupon gave him Mayhew's address. Powers was not available as a witness, but it is undisputed that Mayhew was then leaving for Cambridge, Maryland, and Powers wrote him at his Baltimore address, advising of an inquiry from his publishers in regard to publishing the song "It's A Sin To Tell A Lie". He requested that Mayhew see him on the following day. The contact was later made and resulted in the execution of the contract between the publishers and Mayhew on January 14th, 1936.

Mayhew admitted that until about the time he signed that agreement he had never had any meeting with the publishers; that he knew nothing of their interest in the song until Powers called on January 8th, and informed him of having posted a letter to him; that Powers then repeated that his publishers had asked him to interview Mayhew relative to the song, but he did not know that they would accept it.

It is evident that Miss Meehan's right to be regarded as a procuring cause or instrumentality in the publication of the song by Donaldson Douglas & Gumble, Inc., is dependent upon a showing that Powers, who effected the agreement between the publishers and Mayhew, became interested as a result of her efforts.

The right to recover commissions or compensation is not generally found in this type of case but usually occurs in contests where brokers are asserting claims for commissions. The principle, however, is the same, and the term is usually held to mean that when the sale is effected through the efforts of another with authority to make it, the latter is the procuring cause of such sale. *Warshawsky v. Traub,* 156 Md. 597, 144 A. 833; *Kroh v. Rosenberg,* 158 Md. 273, 148 A. 244; *Stembler v. Wilson,* 175 Md. 667, 3 A. 2nd 759; *Williston on Contracts* (Rev. Ed.) sec. 1030A; 2 *Restatement of the Law of Agency,* sec. 448.

In an endeavor to support that theory, she testified without objection that when Powers first called upon her and before she had directed him to Mayhew, he informed her that Miss Kalan had spoken to the publishers about the song and had represented that, if they would undertake its publication, she (Miss Meehan) would purchase or guarantee the sale of 500 copies. She further exhibited what purported to be the business card of Powers, district manager of the American Society of Composers, Authors and Publishers, which she stated Powers had left with her and on the back of that card this memorandum appears in longhand, "Hello Helen: Sorry not to see you. 'It's a Sin to Tell a Lie' will be ready in a day or two. You can order some thru us. Thanks Lillian"; that "Lillian", whose name appeared upon that message, was "Miss Kalan", and the entire message was in her handwriting; that Miss Kalan in addition to representing Morris Richmond also was a representative of Donaldson Douglas & Gumble, Inc. As stated, all that testimony was admitted without objection, and it is relied upon to show that, through Miss Meehan's efforts and influence with Miss Kalan, the latter interested her publishers, who in turn, through Powers, contracted with Mayhew to publish the song.

In our judgment, the evidence referred to is sufficient to justify the finding of the chancellor that Miss Meehan was the procuring cause of the publication of the song

by Donaldson, Douglas & Gumble, Inc. As such, provided she has established the contract between herself and Mayhew, she is entitled to receive one-half the profits or royalties which have accrued from its publication. Upon that point, it is her contention that she had a general contract with Mayhew to negotiate publication of the song, while Mayhew contends that the authority which he gave her was limited to her ability to negotiate only with Irving Berlin for its publication.

Miss Meehan produced as a witness Mrs. Rose Walter, who testified that in June, 1935, she was in Kresge's Baltimore store and visited the music department; that at that time Mayhew and Miss Meehan were holding a conversation, and just before Mayhew's departure, she heard him say, "Well, there it is. If you can do anything with it, we will go fifty-fifty"; that Miss Meehan just looked at him and smiled and said, "O. K."; that she knew that Mayhew was referring to the manuscript of the song in controversy, because Miss Meehan then held it in her hand and showed it to her after Mayhew's departure. Mrs. Walter was not related to Miss Meehan, and testified she had no interest in the outcome of the suit. Moreover, she gave a plausible reason for being at the store upon that occasion, stating that she frequently went there when she needed music, and was at that time there to purchase sheet music.

In addition to this direct evidence on the part of Miss Meehan and Mrs. Walter, it is not without significance that, after failing to interest Irving Berlin in publishing the song, Miss Meehan persistently continued her efforts with the representatives of other publishing houses to have the song marketed. It is inconceivable that she would have continued those efforts, if under her agreement with Mayhew she was entitled to no pay unless and except she could have interested Irving Berlin, and it is equally hard to understand how or why Mayhew, who for some years previously had been unable to do anything with the song, especially cared whether Berlin or some other house published it, so long as he benefited by its publication.

Giving due weight to all the evidence found in the record and to the inferences naturally deducible therefrom, we are constrained to hold that appellee established the contract which she alleges. The decree appealed from was therefore proper and will be affirmed.

*Decree affirmed, with costs.*