STEELE ET UX. *v.* SETH

[No. 15, October Term, 1956.]

*Decided December 7, 1956.*

The cause was argued before BRUNE, C. J., and COLLINS, HENDERSON and HAMMOND, JJ., and HENDERSON, J., Chief Judge of the Fourth Judicial Circuit, specially assigned.

*J. Wilmer Cronin* and *N. Paul Cronin* for the appellants.

*William B. Evans* for the appellee.

BRUNE, C. J., delivered the opinion of the Court.

This is an appeal by the sellers of real estate from a judgment in favor of a real estate broker for commissions on the

sale of a motel. The appellants, J. Herman Steele and Helen J. Steele, his wife, owned a motel known as "Steele's Motel" just outside of Elkton, Maryland. A Mr. Seaman of New York, (who ultimately became the purchaser of Steele's Motel), had been in communication with a Mrs. Cushard, a real estate broker of Washington, D. C., about the purchase of a motel as a result of an advertisement in a New York newspaper. About July 1, 1955, she had Seaman come from New York to look at motels in the Elkton area and showed him several such establishments. At that time she did not show him Steele's Motel, as it was not then for sale. Several weeks later, on July 16, 1955, Seaman went to the Land Record Office at Elkton to check the price of a motel and while there he met the Clerk of the Court who is a son of Lewis Seth, the appellee. The appellee's son suggested to Seaman that he get in touch with his father, who is a licensed real estate broker, about motel properties. Seaman did so, and Seth showed him a number of motels on that day and again on July 30th. It was on this latter date that Seth pointed out Steele's Motel as a possible buy in the near future, though it was not then on the market; and Seaman indicated that he was interested.

On August 12th Seth went to Steele and told him of the rumor that the then occupant of Steele's Motel "was going to move out on him, leaving him holding the bag." Seth also stated that he had a prospect with a $12,000 down payment, but did not then disclose his name. Steele replied that he had heard the rumor, that on the previous day he had sent for and had talked with the man then occupying the motel and did not believe that he was going to move out. To this Steele added, according to Seth, "but if he does go I will be over and take your man's $12,000.00." By August 16th the rumor proved true and Seth testified that at eight o'clock that morning Steele came to his house and asked him "how long will it take you to get in touch with that man with $12,000.00 and get him here?" On that date, in accordance with Steele's request, Seth at once communicated with Seaman, who responded on August 18th that he would come to Elkton on August 25th. Seth also testified that he informed Steele of Seaman's name when Steele came to see him on the morning

of August 16th, though Steele denied this. On August 19th, Seth sent a message to Steele, through a Mr. Mann, to the effect that Seaman would be there on the 25th, and there seems to be no question that Seaman's name was mentioned in this message.

On August 20th Steele contacted Mrs. Cushard and on August 23rd he gave her an exclusive agency contract, to become effective on August 26th, to sell Steele's Motel. Mrs. Cushard arranged to have Seaman spend the evening of August 25th at Steele's Motel but not to meet Seth until the 26th. Seaman arrived on August 25th, and before meeting Seth the next day he and Steele agreed that they would pretend not to know each other when Seth brought Seaman out to see the motel. This plan was carried out and on August 26th Steele discharged Seth as his agent. Mrs. Cushard continued negotiations with Seaman, and on October 8, 1955, a formal agreement of sale was executed.

The appellee later learned that Seaman had purchased the property and brought this suit at law in the Circuit Court for Cecil County to recover his commissions. The instructions of the court clearly submitted to the jury the issue whether the appellee was employed by the appellants as a broker and whether the appellee was the procuring cause of the sale. The verdict was in favor of the appellee and he was awarded a judgment for the amount of the commissions. This appeal is from that judgment.

The appellants have in general raised two questions on this appeal.

The first question deals with the trial court's refusal to grant a motion for continuance. The granting of a continuance is ordinarily in the sound discretion of the trial court and unless there is an arbitrary exercise of its discretion, the decision thereon is not subject to review on appeal to this Court. We find no evidence of an arbitrary exercise of discretion from the facts in this case. Cf. *Millstein v. Yost,* 197 Md. 348, 79 A. 2d 149, and cases therein cited; *Plank v. Summers,* 205 Md. 598, 109 A. 2d 914, in which the denial of a continuance was held ground for reversal.

The second question concerns who was the procuring cause

of the sale. There is no doubt that the appellee was employed as a broker until August 26th. Whether or not Seth was the procuring cause, was a major issue in this Court. The appellee brought the property to Seaman's attention and Steele engaged Seth as an agent because of his possible buyer who was reported to be able to make a substantial down payment. Seth arranged for Seaman to view the property and after such arrangements were made Mrs. Cushard had her first contact with Seaman in regard to Steele's Motel. Thereafter negotiations proceeded without serious delay and without any breaking off until a contract was agreed upon, doubtless with some assistance from Mrs. Cushard. Seth was simply frozen out of these subsequent negotiations.

Code (1951), Article 2, Section 17, provides that:

> "Whenever, in the absence of special agreement to the contrary, a real estate broker employed to sell, * * * real or leasehold estates * * * procures in good faith a purchaser, * * * and the person so procured is accepted as such by the employer, and enters into a valid, binding and enforceable written contract of sale, * * * and such contract is accepted by the employer and signed by him, the broker shall be deemed to have earned the customary or agreed commission, as the case may be, whether or not the contract entered into be actually in effect, unless the performance of such contract be prevented, hindered or delayed by any act of the broker."

It has long been established in this State that in order for the appellee-broker to recover he must not only prove that he was employed but that he was the procuring cause of the sale. *Keener v. Harrod,* 2 Md. 63; *Taft v. Bayne,* 140 Md. 683, 118 A. 173; *Hill v. Iglehart,* 145 Md. 537, 125 A. 843; *Snedker v. Baltimore Brick Co.,* 198 Md. 499, 84 A. 2d 868; *Baliles v. Bryant,* 207 Md. 332, 114 A. 2d 601.

The appellants urge that during the period of Seth's activity, Seth did not even have a price to quote to Seaman and that Seaman was not ready, willing and able to buy the property.

It is quite evident, however, that Steele was happy when informed of a purchaser able to make a $12,000 down payment to have Seth proceed with negotiations with him. That Seth never reached the point of quoting a final price and terms was due to the fact that he was dropped and was replaced as the Steeles' broker by Mrs. Cushard, through whom final negotiations were conducted. Quite possibly Mrs. Cushard could have attained the same final result, if Seth had never appeared on the scene; but it is also quite evident that Seth initiated the project and arranged for Seaman to visit the Steele's Motel before Mrs. Cushard had any part in interesting Seaman in that particular property.

As to whether or not Seth produced a customer ready, willing and able to purchase the property, the appellants relied very heavily on Seaman's testimony to the effect that until he obtained employment by the duPont Company he was not ready and willing to make the purchase, and that he did not obtain such employment until the latter part of September. However, this is not the whole of his testimony bearing on that subject. He also testified that during the period between the latter part of August and the latter part of September (during which period he was keeping in contact with Mrs. Cushard about the Steele property), he was in touch with a New York broker "because I still felt I wanted to buy a motel even if I didn't receive that job offer from duPont, and I would go anywhere on the eastern coast to buy a motel * * *." As a result of his dealing with the New York broker he did go to see a motel at Laurel, Delaware.

The questions of whether or not Seaman was ready, willing and able to make the purchase and whether or not Seth was the procuring cause of the sale were squarely presented to the jury. The appellants did not challenge the correctness of the trial court's instructions on these subjects, but they did challenge the legal sufficiency of the evidence to warrant the submission of the question to the jury as to whether or not the plaintiff (appellee) had procured a purchaser able, as well as ready and willing to purchase the property. We think that the trial court properly rejected their prayers based on this ground.

It is evident that the first information that Seaman had that the motel was for sale came from Seth. There is sufficient evidence, which the jury could believe, that the Steeles authorized Seth to be their agent and that a buyer with a $12,000 deposit would be acceptable. There was evidence to show that the name of Seaman was disclosed to the Steeles either on the 16th of August, when Steele came to Seth's home, or on the 19th of August, when Mann delivered a message from Seth to Steele that Seaman would be down to view the motel on the 25th of the month. In either event, Steele knew that Seaman was the prospective buyer before he got in touch with Mrs. Cushard.

Continuing in his capacity as agent, Seth made the necessary arrangements for Seaman to view the property. Secrecy with which Seaman's arrival at Steele's Motel was shrouded by Seaman, Steele and Mrs. Cushard, the deception practiced by Seaman and Steele on Seth on August 26th, Steele's notice of discharge to Seth delivered on that day and the subsequent conduct of negotiations between the owners and the ultimate buyer through the competing broker as intermediary, all prevented Seth from participating in the final negotiations which culminated in the sale of the motel.

The sufficiency of these facts to show that Seth was the procuring cause of the sale is supported, as the trial court pointed out in his thorough opinion overruling the appellants' motion for judgment N. O. V., by *Groscup v. Downey,* 105 Md. 273, 65 A. 930; *Slagle v. Russell,* 114 Md. 418, 80 A. 164; *Baltimore Car Wheel Co. v. Clark,* 131 Md. 513, 104 A. 357; and *Hill v. Iglehart,* 145 Md. 537, 125 A. 843.

The appellants rely upon the right of an owner to revoke the agency of a broker before the latter finds a purchaser ready, able and willing to buy, citing in support of this proposition and quoting from *Hill v. Iglehart,* 145 Md. 537, 550, 125 A. 843, and *Ebling v. Brewer,* 154 Md. 290, 298, 141 A. 363. Each of the quotations, however, makes it clear that in order that revocation of the agency may defeat the broker's right to commissions the revocation must be free of bad faith. To the same effect, see *Howard v. Street,* 125 Md. 289, 301, 93 A. 923. The secretiveness and deception which immediately

preceded or accompanied Seth's dismissal and the employment of Mrs. Cushard would be, we think, sufficient to warrant a finding of bad faith in the revocation of Seth's agency.

The discharge of Seth and the consummation of the sale through another broker do not defeat Seth's right to commissions if he was the procuring cause of the sale. *Warshawsky v. Traub*, 156 Md. 597, 144 A. 833. As was said in that case (at 156 Md. 603): "The consummation of a sale through subsequent and independent efforts of the owners, or another broker, does not deprive the plaintiff of his right to commissions, if his efforts were the proximate and procuring cause of the sale." The same rule applies where the vendor effects the sale himself, if the broker's efforts may fairly be regarded as the procuring cause of that result. Such a question is ordinarily for the jury and is "not to be withdrawn from their consideration unless the evidence admits of no reasonable inference that the agreement of sale was the result of the broker's service." *Buchholz v. Gorsuch*, 144 Md. 62, 65, 124 A. 389. See also the cases therein cited and the recent case of *Heslop v. Dieudonne*, 209 Md. 201, 120 A. 2d 669.

As was said in *Jones v. Adler*, 34 Md. 440, which was cited in the *Buchholz Case* and quoted in the *Heslop Case*: "It is well settled, if the agent introduces or discloses the name of the purchaser, and such introduction or disclosure is the foundation upon which negotiations are begun and the sale effected, he will be entitled to commissions, and this too although in point of fact the sale may have been made by the owner. In other words, he cannot avail himself of the services, and by making a sale through information derived from the agent, deprive the latter of his commissions."

Following the rule of this case, we hold that Seth, having been employed as a broker by the Steeles to sell their motel and having produced in good faith a purchaser who was accepted by the employers, is entitled to his commissions, despite the fact that he did not take part in the final negotiations because of the actions of the employers and others.

The appellants also objected to several rulings on evidence. The only objections of this sort which they argue in their brief are that Seaman was not permitted to answer questions

as to why he preferred Mrs. Cushard as broker and as to which broker sold him the property. The materiality of the first question is not apparent, and there is no proffer of any proof which might show its materiality. The second question called for the witness to answer the ultimate question which was for the determination of the jury and the objection thereto was properly sustained. This question thus went beyond the type of questions which have been held proper in other cases involving brokers' commissions such as *Taft v. Bayne,* 140 Md. 683, 118 A. 173 (as to how the purchaser came to buy the property); and *Baltimore Car Wheel Co. v. Clark, supra* (as to whether the broker's prospectus had influenced representatives of the purchaser). In *Way v. Turner,* 127 Md. 327, 96 A. 676, cited by the appellants, the testimony of the purchaser was that he had not been influenced in any way towards consideration of the appellant's property by a telephone conversation between a friend of the purchaser and the broker. The friend had called the broker to inquire about two other properties listed in a booklet prepared by the broker covering about sixty-five properties. These two had been sold, and the broker called attention to the appellant's property. There was other testimony showing that following this telephone conversation the purchaser arranged to visit the appellant's property, but this arrangement was not carried out. Some time later (how much later does not appear), the purchaser did visit the property, without any further act on the part of the broker, and decided to buy. So far as appears, there was no objection to the purchaser's testimony and hence this Court did not pass upon its admissibility. A judgment for the broker was reversed for lack of proof that he was the procuring cause of the sale. This result was reached at least in part on the broker's own statements which frankly showed substantial doubt as to the extent to which he might have been responsible for the sale.

In accordance with the above views the judgment will be affirmed.

*Judgment affirmed, with costs.*