GEORGE P. LEWIS, APPELLANT, V. N. P. MCDONALD ET AL., APPELLEES.

FILED MARCH 5, 1909. No. 15,539.

1. **Evidence: INTENT.** When the intentions of an interested witness become a matter for judicial inquiry, they are ascertained by a consideration of his conduct, and not by his declarations or testimony as to what his intentions were.

2. **Brokers: COMMISSION: EVIDENCE.** As between two brokers, through each of whom negotiations for the sale of land were made with a prospective purchaser, he who can show that his agency was the effective cause of the sale is entitled to recover the broker's commission.

3. ——: ——: ——. Plaintiff, a real estate broker having authority to sell defendant's land, visited the land with the purchaser, and thereafter continued negotiations which were never expressly terminated. Without any intervening agency, purchaser decided to buy, but made an arrangement with the interpleader, also a real estate agent, whereby the latter, with full knowledge of plaintiff's negotiations, solicited and received authority to sell the land, and a promise from the owner of a commission in case he effected a sale, attempting at the same time to procure the land for less money than purchaser was willing to pay. The interpleader promised to divide the commission with the purchaser. The defendant, not knowing of plaintiff's negotiations with the purchaser, agreed that interpleader should bind him by a written contract to convey. *Held,* That as between the brokers plaintiff's efforts were the effective cause of the sale, and he is entitled to the commission.

APPEAL from the district court for Buffalo county: BRUNO O. HOSTETLER, JUDGE.   *Reversed.*

*C. A. Robinson* and *Albert & Wagner,* for appellant.

*W. D. Oldham* and *H. M. Sinclair, contra.*

EPPERSON, C.

Plaintiff, a real estate broker of. Lexington, sued to recover a commission due upon a sale of defendant's real estate which plaintiff alleges was brought about through his agency.   Defendant brought the sum sued for into court, and upon his motion one J. L. Mitchell, another broker of Lexington, was required to interplead, claiming that the sale was effected by him as defendant's agent and that the commission was due to him.   The interpleader prevailed, and plaintiff appealed.

Prior to February 28, 1907, the defendant had listed the land in controversy with the plaintiff for sale.   He had also listed it with the other brokers, but not with the interpleader.   On that day the plaintiff offered the land to one Clifford who afterwards purchased.   Clifford was desirous of buying land in that vicinity, and had spent some time in viewing farms which were for sale.   He had visited several farms which the interpleader had the agency for, and thereby not being able to find desirable land visited the plaintiff for the purpose of ascertaining what he had.   Plaintiff took him to the defendant's farm, a distance of about nine miles, and showed him the land, and with which the purchaser was favorably impressed, but did not at that time conclude to purchase.   The conversations had between the plaintiff and the purchaser are of considerable value in ascertaining to what extent the plaintiff's efforts were effective in bringing about the sale.   The plaintiff testifies that on their way home he had a conversation with the purchaser, in which the purchaser spoke favorably of the land, and asked plaintiff

if he would throw off any of his commission. Plaintiff told him that there was not much in it, but that he would pay the car fare to and from the purchaser's home. Whereupon the purchaser said: "I will tell you what I will do. If my title on the other piece of land is all right I will take this piece, and if it is not I may take it anyway, and if I see a half-section somewhere altogether I may take that." A few days later the purchaser said to the plaintiff: "Lewis, you are ahead yet," and still later that he would be back in about a week and see what he would do. These conversations are not expressly contradicted by the purchaser. He testified to the conversation between himself and the plaintiff as follows: "Before I left that afternoon I says: 'If I should conclude to take anything you have shown, or that you may show me, would you make any sort of a deal in regard to the commission?' He says: 'No, I don't do that kind of business. The best I would do would be to pay your car fare. Is not that good enough?' I says: 'That is fair, but there are some that would do better.'" A few days after his visit to the defendant's land with the plaintiff, the purchaser returned to his home at York, and on the 12th of March following again went to Lexington and renewed his search for desirable land, at this time doing business only with the interpleader. He was not satisfied with any land exhibited to him at that time, and on the morning of March 13 he told the interpleader that the defendant's land was as good a bargain as he could find; that if he (the interpleader) could get it according to the terms that they had agreed to he would buy it. By this he had reference to an agreement between them whereby interpleader gave to purchaser one-half of his commission on land sold to the purchaser. It must be remembered that the interpleader at that time had not been employed by the defendant nor authorized by him to make a sale of his land. He had done nothing toward effecting a sale. He had previously been endeavoring to sell other land to the purchaser instead. He knew of the negotiations between plaintiff and the purchaser

which had never terminated. Through an arrangement made early on the morning of March 13 between the purchaser and the interpleader, and after the purchaser had made up his mind to buy defendant's land, interpleader telephoned defendant, who resided in another county, informing him that he had a friend who might purchase the land, and wanted authority to sell the same and to bind the defendant by a written contract. He also asked for and received a promise of a commission in case he made a sale. In this conversation interpleader attempted to get the land for less money than was demanded by the owner. The owner did not know that the plaintiff herein had been negotiating with the purchaser when he entered into the agreement with the interpleader.

The question here involved is simply to determine which of the two brokers is entitled to the commission. The defendant acted in utmost good faith. He is willing to pay one commission, which he could possibly avoid by pleading the statute of frauds. This he has waived. Had it not been for the intervention by the interpleader during the negotiations for this sale by plaintiff, no doubt would exist but that the controversy between the plaintiff and defendant could have been quickly adjusted. In *Butler v. Kennard,* 23 Neb. 357, it is held: "Where the price of property and terms of payment are fixed by the seller, and a broker engages to procure a purchaser at this price and upon these terms, if, upon the procurement of the broker, a purchaser is produced with whom the seller himself negotiates and effects a sale, the broker is entitled to his commission." In the opinion we find the following: "It is a well-established rule in this as well as other states that, where a broker is employed to sell real estate, it is not necessary that the whole contract should be completed alone by him, in order to entitle him to his commission. But if, through his instrumentality, the purchaser and owner are brought in contact, and a sale is made through the instrumentality of the agent, he is entitled to his compensation; and this without reference to whether the

owner, at the time the sale was perfected, had knowledge of the fact that he was making the sale, through such instrumentality." See, also, the following cases: *Potvin v. Curran & Chase,* 13 Neb. 302; *Nicholas v. Jones,* 23 Neb. 813; *Craig v. Wead,* 58 Neb. 782. Under this rule and the facts in this case, we think that the plaintiff is entitled to recover, unless the agency and the efforts of the interpleader were such as to give him a greater right to the commission. As between two brokers, he is entitled to recover who can show that his efforts resulted in the sale of the land. If the sale is the result of efforts exercised by both the brokers, the rule seems to be that the one who first brought the seller and purchaser together is entitled to the commission. By bringing the seller and purchaser together we do not mean necessarily that he must introduce them to each other, but that, if his efforts result in bringing the minds of the two to an agreement resulting in the sale and purchase of the land, then, within the meaning of the law, he has brought them together. In the case at bar there can be no doubt but that it was through the agency of the plaintiff that the sale in controversy was negotiated. The interpleader had no part in negotiating the sale. He put forth no efforts whatever to bring about the transfer. He exerted himself only after the purchaser decided to buy. The motive which then prompted him to action seemed to be to secure as good a bargain as possible for his friend, the purchaser, and for himself a commission he never earned.

The purchaser saw the land only when it was shown him by the plaintiff. The only negotiating for the land was with the plaintiff. The plaintiff was the only human agency exercised in behalf of the defendant which was influencial in the transaction. It is true the purchaser testified that he would not have purchased through the plaintiff. In this he was mistaken. He further testified that he made up his mind to purchase on the morning of March 13 at the breakfast table, which was before the interpleader telephoned to defendant. His conduct was incon-

sistent with his intention expressed on the witness stand that he did not intend to buy otherwise than through the interpleader. He is interested in this action, and expects to receive one-half the commission recovered by the interpleader. We ascertained his intentions from his conduct, and not from his statements as to what they were. The lower court found that the interpleader was entitled to the commission for his services in making the sale. On what theory the trial court reached this finding we cannot discern. We cannot see anything in this case indicating that the interpleader did anything whatever to earn a commission. Nor can we see wherein his efforts resulted in the consummation of a sale or in any way influenced the purchaser to buy. Were the defendant contesting the demands of the interpleader, without doubt he would prevail, because interpleader, while pretending that he desired to represent the defendant, in fact was representing purchaser and attempting to get the land for less than the defendant was demanding therefor.

*Holland v. Vinson,* 124 Mo. App. 417, 101 S. W. 1131, is very similar to the case at bar, with a few distinguishing features making the case even stronger for the party standing in a position similar to that occupied by Mitchell in this case. There a real estate broker, who was suing for his commission, was unable to consummate the sale upon the terms authorized, but while the purchaser was still negotiating with him the owner authorized another agent to sell to the purchaser for a less amount. In the opinion the court said: "If such a course of business was tolerated a real estate broker never would feel sure of his commission. But it is not tolerated. The law will not permit one broker who has been intrusted with the sale of land and is working with a customer whom he has found, to be deprived of his commission by another agent stepping in and selling to said customer for less than the first broker is empowered to receive. The landowner does wrong to grant such authority to the interfering broker and is bound to pay the one who procures the buyer. * *

The conclusion is almost irresistible that the sale was concluded in the manner it was in order to beat plaintiffs out of their compensation. Whether that was true or not, the sale was made to their customer, and one whom they had procured by their own efforts, before he had refused to buy from them and while they were endeavoring to sell to him. The whole matter happened in a week."

Another Missouri case similar to this is *McCormack v. Henderson,* 100 Mo. App. 647, 75 S. W. 171. Plaintiff had solicited a sale of the property to the purchaser and visited him several times. Plaintiff left town on Monday and returned Friday. During his absence one McGregor, who was the purchaser's friend, was told about the property by the purchaser. McGregor then, at the purchaser's request, and as his representative, went to the defendant after the purchaser had decided that he wanted the house, and through him submitted to the defendant the highest price the purchaser would pay. The negotiations finally resulted in defendant fixing the price at less than that for which plaintiff was authorized to sell. Previously, however, the purchaser had decided not to buy through the agency of the plaintiff because he had taken offense at some language used by the plaintiff. The court held that the evidence was sufficient to show that the efforts of the plaintiff were the procuring cause of the sale, nothwithstanding defendant consummated it himself with McGregor, who was, in fact, the agent of the purchaser. The court said: "If it was through plaintiff's efforts, *of which there can be no doubt,* that McClintock came to the conclusion to purchase the fact that because he became dissatisfied with plaintiff and made the arrangement to purchase through McGregor did not have the effect of depriving plaintiff of his right to commission for his services. The evidence that McClintock had concluded to buy the property before he ceased negotiations with plaintiff was clear."

In *Reynolds v. Tompkins,* 23 W. Va. 229, the court held that where one broker finds a purchaser whom he negoti-

ates with for the sale of land, and when the sale is about to be consummated another broker meets the prospective buyer, and with full knowledge of the negotiations of the first broker sells the property to such buyer for a less price, and the owner ratifies such sale in ignorance of the negotiations of the first broker, the owner is not liable to the second, but to the first broker for commission. There are many cases holding that the first broker attempting to sell to the purchaser in a contest between brokers is not entitled to recover, but we are unable to find any case holding that a broker whose efforts have not resulted in the sale, and who steps in when the sale was substantially consummated, is entitled to prevail as against a former broker who has been successful in bringing the purchaser to the owner or whose efforts alone were effective in bringing about the sale.

We recommend that the judgment of the district court be reversed and this cause remanded for further proceedings.

DUFFIE AND GOOD, CC., concur.

By the Court: For the reasons given in the foregoing opinion, the judgment of the district court is reversed and this cause remanded for further proceedings.

REVERSED.