# THE BALTIMORE CAR WHEEL COMPANY

## *vs.*

## LINWOOD L. CLARK.

*Real estate brokers: commissions.  Prayers: "no evidence";*
*duty of Court of Appeals.  Proximate or procuring*
*causes: ordinarily for the jury.*

To entitle a real estate broker to recover commissions for a
sale of property he must not only show his efforts or negotia-
tions to accomplish the sale or purchase, but he must show that
the sale or purchase was accomplished as a result of such efforts
or negotiations.                                        p. 516

Where the defendant, after the refusal of a prayer withdraw-
ing the case from the jury on the ground of want of legal evi-
dence, proceeds to examine witnesses in his behalf, he loses the
benefit of any exception taken to the rejection of such prayer.
                                                       p. 516

On appeal from the action of the lower Court in refusing to
take the case from the jury, because of lack of legal evidence,
it is the duty of the Court of Appeals to assume the truth of
the plaintiff's evidence, to give him the benefit of all legitimate
and fair inferences deducible from the facts and circumstances
of the case and to decide whether there is in the record any
evidence legally sufficient to prove the facts necessary to be
proved in order to entitle the plaintiff to recover.        p. 518

Proximate or procuring causes are ordinarily questions for
the jury, and the Court will not decide them except in clear
cases.                                                 p. 522

*Decided December 12th, 1917.*

Appeal from the Baltimore City Court.  (HEUISLER, J.)

The facts are stated in the opinion of the Court.

The following are the prayers that the Court directed should be published with the report of the case:

*Deft.'s 1st Prayer.*—The defendant prays the Court to instruct the jury that the mere fact of the agent having introduced the purchaser to the seller, or disclosed the names by which they came together to treat will not entitle him to compensation, but if it appears that such introduction or disclosure was the foundation on which the negotiations was begun and conducted and the sale made, the agent is entitled to his compensation. (*Granted.*)

*Deft.'s 2nd Prayer.*—The defendant prays the Court to instruct the jury that to entitle the plaintiff to recover a commission for the sale of the property mentioned in the evidence he must not only show his efforts or negotiations to accomplish the sale, but he must show that the sale was the result of such efforts or negotiations. (*Granted.*)

*Deft.'s 3rd Prayer.*—The defendant prays the Court to instruct the jury that if they find from the evidence that the plaintiff is entitled to recover compensation for making the sale mentioned in the evidence, the recovery shall be limited to a commission only on so much of the purchase price as represents the price paid for the property, which the evidence shows belonged to the defendant at the time he met the plaintiff, and the plaintiff shall not be entitled to any commission on the sum paid by the purchaser for the property bought by the defendant from Hubner and Hunting, for the purpose of meeting the requirements of the Pennsylvania Railroad, if they shall so find. (*Granted.*)

*Deft.'s 4th Prayer:*—The defendant prays the Court to instruct the jury that to entitle the plaintiff to recover in this case, he must establish that right by a preponderance of evidence. (*Granted.*)

The cause was argued before Boyd, C. J., Briscoe, Burke, Thomas, Pattison, Urner, Stockbridge and Constable, JJ.

*Rignal W. Baldwin* (with whom was *Richard M. Duvall* on the brief), for the appellant.

*Edward L. Ward,* for the appellee.

Burke, J., delivered the opinion of the Court.

This is an appeal by the Baltimore Car Wheel Company, a corporation, from a judgment for one thousand one hundred and twelve dollars and fifty-five cents entered against it in the Baltimore City Court wherein Linwood L. Clark was the plaintiff. The suit was brought by Mr. Clark to recover commissions at the rate of $2\frac{1}{2}$ per cent. on the sale of certain property of the appellant to the Pennsylvania Railroad Company. Forty-four thousand, five hundred and two dollars was the amount paid by the purchaser for the property. The action was in *assumpsit,* and the declaration contained the common counts only. During the course of the trial the defendant reserved five exceptions,—two relate to rulings on evidence and three to the action of the Court on the prayers and special exceptions. The exact date when the sale was made does not appear, but it may be said to have been concluded prior to May 12, 1916, as the deed was recorded on that day. The sale was made directly by the defendant to the railroad company.

The legal principles which must control the case are so well settled that we need only refer to a few, among many in this Court, in which they have been announced and applied.

In *Keener* v. *Harrod,* 2 Md. 63, the Court said: "We do not agree with the counsel for the appellees, that they would have earned their reward, by merely disclosing the names of the persons who ultimately purchased the property, as a secret of their business as property agents, if a sale had not been affected. We understand the rule to be this (in the absence of proof of usage), that the mere fact of the agent having introduced the purchaser to the seller, or disclosed names by which they came together to treat, will not entitle him to compensation; but, if it appears that such introduc-

tion or disclosure was the foundation on which the negotiation was began and conducted, and the sale made, the parties can not afterwards, by agreement between themselves, withdraw the matter from the agent's hands, so as to deprive him of his commission." See also *Blake* v. *Stump*, 73 Md. 160. In *Martien* v. *Baltimore City*, 109 Md. 260, which followed *Keener* v. *Harrod, supra,* and *Walker* v. *Baldwin,* 106 Md. 634, JUDGE THOMAS said that, "to entitle a broker to recover commissions for a sale or purchase of property, he must not only show his efforts or negotiations to accomplish the sale or purchase, but he must show that the sale or purchase *was accomplished as the result* of such efforts or negotiations." This principle was again announced in the recent case of *Way* v. *Turner,* 127 Md. 327.

At the conclusion of the plaintiff's case the defendant submitted a prayer to withdraw the case from the jury upon the ground that no legally sufficient evidence had been offered to entitle the plaintiff to recover. This prayer was refused and this ruling constitutes the first exception. As the defendant proceeded to examine witnesses on its own behalf after the rejection of this prayer, it lost the benefit of this exception. *Pennsylvania Railroad Co.* v. *Cecil,* 111 Md. 288; *Knecht* v. *Mooney,* 118 Md. 583; *Bernstein* v. *Merkel,* 126 Md. 454.

After the testimony of both parties had been concluded the Court granted the following prayer submitted by the plaintiff:

"The Court instructs the jury that if they shall find from the evidence that the plaintiff was employed by the defendant to make sale of its property referred to and located in Baltimore City, and that the plaintiff submitted said property to the Pennsylvania Railroad Company, and that thereby the said railroad and the defendant were put into communication about it, and that a portion of said property was thereafter sold to said railroad by the defendant, the plaintiff is entitled to recover such commissions as may have been agreed upon between the plaintiff and the defendant, if the

jury shall find that any agreement was made as to the amount of commissions, or such commissions as the jury may believe to be reasonable for the services, if the jury find there was no agreement as to their amount; provided, the jury shall further find that the disclosure to the said railroad by the plaintiff caused the communication by the railroad with the defendant and was the foundation upon which the negotiation was conducted and the sale made."

The defendant filed special exceptions to the granting of this prayer: *first,* because there was no evidence from which the jury could find that the railroad and the defendant were put into communication about the property mentioned in the case by anything done by the plaintiff; and *secondly,* that the disclosure to the railroad by the plaintiff caused the communication by the railroad with the defendant and was the foundation upon which the negotiation was conducted and the sale made. The exceptions were overruled. The defendant submitted four prayers, all of which the Court granted. These prayers which the *Reporter* will set out in the report of the case embodied correct principles and submitted the case of the defendant clearly and fairly to the jury.

The plaintiff's granted prayer was correct in form and announced principles under which he was entitled to recover, as those principles are declared in the cases cited, and, unless the Court committed injurious error in its rulings on evidence embraced in the second and third bills of exceptions and in overruling the special exceptions and granting the plaintiff's prayer the judgment must be affirmed. As the action of the Court in overruling the special exceptions to the prayer presents the most important question in the case, that will be first considered. In passing upon the action of the Court it is not our duty or province to decide the question of *fact,* as to whether the railroad company and the defendant were put into communication about the property by anything done by the plaintiff, or the *fact* that the disclosure to the company caused the communication by the company with the defendant and was the foundation upon

which the negotiation was conducted and the sale made. Our duty is limited to a decision as to whether there is found in the record evidence legally sufficient to prove these facts, or, stated in another way, our duty is merely to decide whether there is found in the record any legally sufficient evidence from which the jury could properly find those facts. We must assume the truth of the evidence offered by the plaintiff and we must give him the benefit of all legitimate and fair inferences deducible in his favor from all the facts and circumstances of the case.

There is evidence in the record tending to establish the following facts which relate to the question we are now considering. The property of the appellant, which it sold to the railroad company, is located in the west or northwest section of Baltimore City, and lies directly between the railroad lines of the Western Maryland and the Pennsylvania Railroads. The Pennsylvania Railroad had purchased from the appellant two small pieces of land,—one in 1911 and the other in 1912, being portions of about sixteen acres of land in that locality. The property of the appellant was offered to the railroad in 1914, and it declined to buy, owing, as stated in a letter dated November 7, 1914, from S. C. Long, General Manager, "to the unsettled conditions about Baltimore in connection with the tunnels, etc." The appellant was anxious to sell the property, and it was again offered to the railroad by Caughy, Hearn & Carter on February 17, 1915. This offer was submitted to Mr. Long, the General Manager, who replied that he saw no reason for changing the recommendation of November 7, 1914, as, "under the present status of affairs, we do not recommend the purchase of this property."

Linwood L. Clark, the plaintiff, is an attorney at law, and has been engaged in real estate business in Baltimore City for 12 or 13 years. In August, 1915, he learned that the property of the appellant was for sale, and in company with a Mr. Kennedy he visited the property, and was shown over it by Mr. J. Paul Baker, the secretary of the defendant com-

pany. Mr. Baker gave him a booklet containing a description of the property, and Mr. Clark testified that Mr. Baker authorized him to sell the property, and promised to pay him a commission of 2½ per cent. on the sale. He prepared a prospectus of the property setting forth its advantageous location and suitability for manufacturing and other purposes. He enclosed this prospectus in a letter, dated August 9, 1915, which he sent to T. W. Hulme, the real estate agent of the Pennsylvania Railroad, Broad Street Station, Philadelphia. It was stated in the prospectus that: "This property was for years the plant used to manufacture the famous Lord Baltimore Electric Trucks. The machine shops and equipment on this place are such that could be used in the manufacture of machinery and particularly war materials, such as gun carriages, gun mounts, motors and anything in the line of vehicle construction. Besides being equipped with lathes, drills, cranes and etc, the plant has two cupolas, one of which is capable of handling 100 tons a day, and the other having an output of 40 tons. The machine shop is located in a substantial frame, two-story building, reinforced with iron girders, measuring 100 feet by 66 feet. The storage and smelting department is of similar construction, and measures 70 feet by 661 feet.

"Three streets are laid out by the city running through the undeveloped portion of this property and could be advantageously sold off for building purposes if not desired for extensions to the factory buildings. Adjoining the factory buildings is a large stone office building, splendidly designed for its purpose.

"The Car Wheel Company is well located for a manufacturing site of any description, and particularly any enterprise which deals in the output of any iron commodity. The adjacent property to the Car Company has been rapidly developed in the past two years, and sites in this locality are now scarce."

Mr. Hulme replied to this letter on August 16, 1915, stating that he saw "no necessity for the acquisition of the prop-

erty of the Baltimore Car Wheel Company comprising about sixteen acres of land." On August 19, 1915,—three days after the letter of Mr. Hulme to the plaintiff referred to above,—S. C. Long, the General Manager of the Pennsylvania Railroad Company, wrote to Mr. Hulme as follows:

"Dear Sir:

"Referring to your letter of October 29, 1914, to General Superintendent Lee, and our reply thereto of November 7th, in regard to offer of Baltimore Car Wheel Co., to sell our Company property at Fulton Junction, which at that time we did not care to acquire.

"Recently we find it desirable to make use of this property for the construction of a "Y" connection between our tracks and those of the Western Maryland R. R., and we are writing to ask if you will ascertain whether it will be possible for us to lease what property we need from the Car Wheel Co. during the time we are constructing the B. & P. tunnels, and if so, what the rental would be.

"Will you kindly ascertain this information, and advise us at your early convenience, and oblige,

Yours truly,

(Signed) S. C. Long,
General Manager."

On August 24, 1915, Mr. Hulme wrote to Paul C. Welsh, the local agent of the railroad company at Baltimore, in reference to obtaining a lease upon the property of the appellant. In this letter he stated that "recently Mr. Linwood L. Clark, 215 St. Paul street, Baltimore, has again referred the property to us, and we advised him under date of August 16th, that the railroad company was not interested in the property."

The appellant declined to lease the property, and thereupon the sale of the property conveyed by the deed of May 12, 1916, was concluded between Mr. Welsh, representing the railroad company, and J. Paul Baker, representing the appellant,—

the negotiations extending over a period of two months. Under the rules of the railroad company, if the question of the sale or purchase of property arises it is the duty of the real estate agent to ask the General Manager whether or not such sale or purchase would be necessary or desirable, and in this particular case the purchase was made upon the authority of the Board of Directors upon the recommendation of Mr. Long, the General Manager. The evidence is clear that Mr. Hulme received the letter of August 9, 1915, written by Mr. Clark, and also the prospectus enclosed, and in view of the relation existing between the Real Estate and the General Manager Departments it is reasonable to conclude that before this property was purchased the General Manager, Mr. Long, was fully advised by Mr. Hulme as to Mr. Clark's connection with the property and what he had said about it in the prospectus. The matter of the Clark offer Mr. Welsh testified "was cut and dried at headquarters."

The defendant caused to be issued a commission to take the testimony of Mr. Long and Mr. Hulme at the office of Mr. Hulme, Broad Street Station, Philadelphia, but the evidence of neither was taken. They could have testified as to what knowledge they had of Mr. Clark's efforts to sell the property, and whether or not they were influenced by the advantages, etc., set forth in the prospectus. But neither was called, the defendant contenting itself with taking the deposition of Mr. Study, a clerk in Mr. Long's office, and of Mr. Gauff, the right-of-way agent. The evidence of neither of these witnesses does not tend to show that the sale effected can not be referred to the instrumentality of Mr. Clark. The facts and circumstances stated and the fair conclusions to be drawn from them were sufficient to have justified the Court in overruling the special exceptions and granting the plaintiff's prayer.

There remains to be considered the ruling of the Court upon the questions embraced in the second and third exceptions. These questions were:

1st. "When Mr. Long wrote the letter of August 19, 1915, was he acquainted from this office in any way with the fact that Mr. Clark had submitted this property to the railroad company?"

2nd. "What influence, if any, did the letter from Mr. Clark, dated August 9, 1915, have upon the purchase of this property by the railroad company from the Baltimore Car Wheel Company?"

The facts sought to be proved were very important. If Mr. Long did not know that the property had been submitted by Mr. Clark, or, if he did know that the purchase of the property was not influenced by the statements contained in that letter, these facts could have been readily proved by him and probably by Mr. Hulme. But the witness under examination, Mr. John P. Gauff, had nothing to do with the purchase, and could not possibly have testified of his own knowledge whether Mr. Long was acquainted with the Clark offer, or to what extent he or the Board of Directors were influenced by it. He did, however, answer the first question, so far as he was qualified to answer, by saying that he did not acquaint Mr. Long with the Clark offer.

In *Turner* v. *Way,* 127 Md. 327, relied on by the appellant, this Court did decide as matter of law that the services of Mr. Turner were not the procuring cause of the sale therein under consideration, but in that case Mr. Hazard, the purchaser of the property, positively testified that he was not influenced in the purchase by the communication mentioned in the testimony.

Proximate, or procuring cause is ordinarily a question for the jury, and the Court will not, except in a clear case, decide it. That question was, under the facts and circumstances of this case, one for the consideration of the jury and was submitted to them by appropriate instructions.

Finding no error in the rulings of the Court, the judgment will be affirmed.

*Judgment affirmed, with costs.*