## FIRST NATIONAL REALTY CORPORATION v. BLACKWELL REALTY CO., Inc.

### No. 983.

Municipal Court of Appeals for the District of Columbia.

Argued Dec. 11, 1950.

Decided Dec. 20, 1950.

J. E. Bindeman, Washington, D. C., for appellant. E. F. Gallagher, Washington, D. C., also entered an appearance for appellant.

2. Brooks v. District of Columbia, D.C.Mun.App., 48 A.2d 339.

**320**

Joel D. Blackwell, Washington, D. C., for appellee.

Before CAYTON, Chief Judge, and HOOD and CLAGETT, Associate Judges.

CLAGETT, Associate Judge.

Plaintiff sued defendant for a broker's commission. The principal issue was whether one of plaintiff's salesmen was the procuring cause of a sale of real estate. The trial court found that he was and defendant has appealed.

Defendant corporation is in the business of buying and selling real estate. At the time it purchased the property in question, plaintiff had presented to the former owner an unacceptable offer for the same property from another person. Immediately upon learning that defendant had puchased the property, plaintiff applied for and received from it a written non-exclusive listing and soon thereafter submitted an offer in behalf of the same customer. This offer was below the asking price of $13,950 and was rejected by defendant's president, who informed plaintiff's representative, however, that he would accept $13,500. Plaintiff, however, failed to secure a $13,500 offer from the buyer.

Meanwhile, defendant had followed its usual custom of sending out a mimeographed sheet to various real estate brokers listing several properties, including this one, for sale, giving the asking price and terms and stating the commission which would be payable. One of the brokers who received this listing had desk space in the office of defendant corporation. The second broker showed the house on a Sunday. Among other persons who inspected it was the same prospective buyer whose offer, submitted through plaintiff, had previously been rejected. This person thereupon submitted through the new broker an offer which was higher than that submitted through plaintiff but was still below the asking price of defendant. When the latest

offer was presented to defendant's president, the latter rejected it but told the second broker, as he had told the first, that his company would accept $13,500 for the property. The second broker again approached the same person and finally secured a written offer of $13,500, which was immediately accepted by defendant and the transaction closed. Defendant's president testified he had paid the second broker a commission of $250 and had offered plaintiff's salesman $125 because "he wanted to give him something for his efforts." Plaintiff rejected this proffer and sued for $647.50. The trial court first awarded plaintiff $625—less than the amount claimed, which in turn was less than the usual District of Columbia commission of 5%—but after a hearing on a motion for new trial reduced this amount to $312.50 because plaintiff's authorization contained the phrase that the property was to be sold "on a cooperative basis."

The oft repeated rule of law applicable to such situations is this: That broker is the procuring cause of a sale who finds a purchaser, ready, willing, and able to buy upon the terms authorized by the seller, or who produces an offer satisfactory to the vendor, provided there has been no bad faith towards another broker. Whether a broker was the procuring cause of a sale is ordinarily a question for the trier of the facts. Good faith and strict neutrality on the part of the owner as between rival agents seeking to make the sale is the test of the owner's liability.[1] A corollary to this rule is the further one that a real estate agent is not entitled to a commission merely by finding a purchaser, but he must be the direct and proximate cause of the sale.[2] This rule may be paraphrased by saying: The controlling factor is which broker saw the customer last and brought him to a favorable decision.[3]

Tested by these rules, we find no substantial evidence to support the judg-

1. Rieffer v. Hollingsworth, D.C.Mun.App., 52 A.2d 632, and cases cited therein.

2. Davidson v. Jones, D.C.Mun.App., 34 A. 2d 261; L. A. Clark Co. v. Millboro Lumber Co., 3 Cir., 22 F.2d 551; see

Rosenfield v. Wall, 94 Conn. 418, 109 A. 409, 9 A.L.R. 1189.

3. McCoy v. Zahn Corporation, 183 Cal. 191, 191 P. 20.

ment of the trial court for plaintiff. Conceding as it must the general correctness of these rules, plaintiff argues first that this is not a case of competing brokers because the broker who completed the sale was not properly authorized to sell the property. It bases this contention upon the argument that the mimeographed listing upon which this broker acted did not comply with Code 1940, § 45—1408, which includes among grounds for revoking a real estate broker's license the offering of a property for sale "without the written consent of the owner or his authorized agent". But we consider the point immaterial in the present case. It would arise if the second broker were suing for his commission. Here, however, the question is not whether the second broker earned his commission but whether plaintiff did.

Plaintiff's next contention is more in the form of an insinuation than a charge. It suggests that possibly the seller did not remain neutral as between the two brokers. It dwells on the fact that the successful broker had desk space in defendant's office and questions the testimony of defendant's president that he paid the second broker a commission and why, even if such commission were paid, it was less than one-half of the 5% ordinarily paid in the District of Columbia. But insinuations are not enough. In order to find that a seller has not been neutral as between two brokers, there must be evidence of actual facts justifying such conclusion. Here the evidence was uncontradicted that the successful broker paid rent for his desk space and had no other official connection with defendant. Likewise the evidence was undisputed that defendant did pay the successful broker a commission and also that it was defendant's regular practice, being in the real estate business itself, to pay less than the normal commission to other brokers for the sale of its properties. Furthermore, as opposed to these suspicions was the testimony of the salesman for plaintiff itself that before consummating the sale of the property through the other broker to the ultimate buyer for $13,500, the president of defendant corporation suggested to one of plaintiff's salesmen that he try to sell the property to the same buyer at the same price. This the salesman was unable to accomplish, although the other broker later succeeded. Therefore instead of there being evidence of lack of neutrality on the part of the seller, there was direct and uncontradicted evidence of his entire neutrality. We must conclude, therefore, that the judgment for plaintiff should be

Reversed.