## COWAL, TRADING AS GIBRALTAR REALTY CO. *v.* MARLETTA, TRADING AS MARLETTA'S ITALIAN RESTAURANT

[No. 184, September Term, 1957.]

*Decided March 28, 1958.*

The cause was submitted to BRUNE, C. J., and HENDER-SON, PRESCOTT and HORNEY, JJ., and CARTER, J., Chief Judge of the Second Judicial Circuit, specially assigned.

Submitted on brief by *Lewis H. Weiss,* for appellant.

No brief and no appearance for appellee.

CARTER, J., by special assignment, delivered the opinion of the Court.

The Circuit Court for Prince George's County set aside the verdict of a jury in favor of the appellant (broker) for $670 commissions and granted the motion of the appellee (owner) for a judgment n.o.v. under Maryland Rule 563 b 1. While the record is silent on the subject, the apparent basis for the trial court's action was that there was no legally sufficient evidence from which the jury could have found that the broker's efforts were the procuring cause of the sale. This appeal questions the correctness of that ruling and requires a review of the evidence.

The following facts are undisputed. In August, 1953, the owner advertised for sale, in a Washington newspaper, his delicatessen business located on Marlboro Pike, Prince George's County. In response to this advertisement and immediately thereafter, Mr. Anderson, one of the purchasers in this case, investigated the business but did not buy because the price was too high. On February 13, 1954, the broker secured from the owner written authorization to sell, which provided that the sale price should be $16,000 plus the inventory, and the commission to be 10 per cent, if sold through the efforts of the broker. The broker then advertised the business for sale in a local newspaper by a brief description, setting forth the nature of the business, the sale price, the weekly sales and that it was ideal for two persons. In response to this advertisement he received telephone calls from Mr. Lucien Hale of Virginia on March 15th and 16th. After receiving these calls he wrote the name of Mr. Hale, his address and telephone number, and the name of Mr. Anderson on his office card as prospective purchasers. The last of March, 1954, Anderson investigated the business again

and went to see the owner. At this time the owner reduced the sale price to $15,000, and included the stock, with a guarantee it was worth $3,000. Anderson accepted this offer. Thereafter, about the first of April, the broker met the owner and Anderson in the store, and the owner informed him he had sold the business to Anderson. The broker then exhibited his office card with the name, address and telephone number of Hale and the name of Anderson listed as his clients and claimed commissions on the sale. Anderson denied he had ever known the broker in relation to the sale and the owner denied his claim for commissions. The owner and Anderson then left the store stating they were going to a lawyer's office to have legal papers prepared concerning the sale, and were joined outside by Mr. Hale. Prior to the sale, Anderson and Hale had jointly inspected about 10 delicatessens, with the view of purchasing such a store. About a week subsequent to the agreement of sale, Hale inspected the business with Anderson and later joined him as co-purchaser for the price of $13,400.

The broker testified that during the telephone calls from Mr. Hale on March 15th and 16th, Hale informed him he was calling in response to his advertisement for a friend whose name was Anderson; that because Hale appeared to be acting in good faith he gave him the name of the owner and the location of the business; that the present and potential sales of the business were then discussed; that subsequent to Hale's inquiry he telephoned him several times suggesting they inspect the business and that Hale consistently informed him his friend was not yet interested, had not had time to investigate, and as soon as he became interested Hale would contact him. He further testified that during the conversation at the store between Anderson and himself, Anderson stated he had received information the store was for sale from a Mr. Cheshire; that he then telephoned Cheshire who denied giving Anderson any information about the business being for sale.

Mr. Hale was called as a witness by the broker and stated that the extent of the telephone conversations between the broker and himself on March 15th and 16th was an inquiry

from him to determine if the business was located in Virginia and when he discovered it was in Maryland, he informed the broker he was not interested; that he did not learn the address of the business or the name of the owner from the broker and that Anderson's name was not mentioned. He further stated that although he wanted a business in Virginia, Anderson prevailed upon him to inspect this business after Anderson had purchased it, and that he ultimately joined with him as co-purchaser in the final contract.

Mr. Anderson testified that he was caused to inspect the business the last of March, 1954, and negotiate the sale solely because of the newspaper advertisement of the owner in August, 1953; that he negotiated the agreement of sale on his own behalf; that Hale did not inform him the business was for sale, nor have any part in the matter until a week after he had entered into the agreement of sale with the owner.

The law in respect to broker's commissions, where the sale is negotiated by the owner, is well settled by several decisions of this Court. The rule in such a situation, where the broker's authority remains unrevoked, is that a broker is entitled to his commissions if his services and efforts were the procuring cause of the sale even though the actual agreement of sale was negotiated by the owner directly with the purchaser and at a price less than the figure at which the broker was authorized to sell. *Keener v. Harrod,* 2 Md. 63 (1852); *Jones v. Adler,* 34 Md. 440 (1871); *Baltimore Car Wheel Co. v. Clark,* 131 Md. 513, 104 A. 357 (1917); *Buchholz v. Gorsuch,* 144 Md. 62, 124 A. 389 (1923); *Heslop v. Dieudonne,* 209 Md. 201, 120 A. 2d 669 (1956). The rationale of the rule is that the owner may not take advantage of the broker's services to secure a prospective purchaser and then deprive him of his commissions by selling directly to his client at a figure less than the broker could sell under his authority. Whether the services and efforts of the broker were the procuring cause of the sale would ordinarily be a question for the jury. In discussing this rule in the case of *Buchholz v. Gorsuch, supra,* at p. 65, it was said:

> "The fact that the sale was effected by direct agreement of the vendors and vendees does not dis-

entitle the appellee to commissions if his efforts may fairly be regarded as the procuring cause of that result. Such a question is ordinarily left to the jury for decision. It is not to be withdrawn from their consideration unless the evidence admits of no reasonable inference that the agreement of sale was the result of the broker's service."

See also *Hill v. Iglehart,* 145 Md. 537, 547, 125 A. 843 (1924).

We have held that a plaintiff who produces any testimony from which an inference of fact may be fairly deduced, of sufficient probative force, to enable an ordinary intelligent mind to draw a rational conclusion in support of his right to recover, is entitled to have his case go to the jury. See *State v. Prince George's County,* 207 Md. 91, 113 A. 2d 397 (1955); *State v. Wooleyhan Transport Co.,* 192 Md. 686, 692, 65 A. 2d 321 (1949). We think that an ordinary intelligent mind could rationally conclude from the testimony of the broker, when considered in the light of the undisputed facts and the sequence of events (1) that the information concerning the sale of this business which the broker testified he gave Hale, was by Hale communicated to Anderson, prior to Anderson contacting the owner; and (2) that acting on this information Anderson was caused to contact the owner and negotiate the sale. The fact that the positive testimony of both Hale and Anderson denied that Hale communicated to Anderson any information concerning the sale of this business prior to Anderson contacting the owner is not sufficient to eliminate such inference. Anderson's testimony that the sole cause of his contacting the owner in March, 1954, was the owner's personal newspaper advertisement in August, 1953, is directly contradicted by the testimony of the broker that Anderson informed him he learned the business was for sale through Mr. Cheshire, and that Cheshire informed him by telephone he did not advise Anderson the business was for sale. Hale's testimony concerning the limited inquiries he made of the broker and the meager information he received from him is directly contradicted by

the testimony of the broker. The jury could have accepted the broker's testimony on these points as true and found the testimony of both Anderson and Hale to be untrue and therefore have justifiably discounted their explanations on other features of the case including the statement of Hale that he did not inform Anderson of the broker's advertisement or telephone discussion prior to Anderson contacting the owner; and likewise have discounted Anderson's statement that the owner's newspaper advertisement in August, 1953, was the cause of his contacting the owner in March, 1954, and negotiating the sale. We find therefore that the inferences mentioned above are reasonable and legitimate deductions under all the evidence and are sufficient to support the finding of the jury that the efforts of the broker were the proximate and procuring cause of the sale.

The question of whether a broker's efforts are the procuring cause of a sale is not to be determined by whether his services are slight or extensive but rather on the basis of whether the efforts he did make were in fact the proximate cause of interesting the purchaser, and his ultimate agreement to buy. The fact that in this case the broker did not actually exhibit the business to the purchasers or negotiate with the owner, or participate in the execution of the agreement of sale, would not disentitle him to commissions if in fact his efforts in advertising it and discussing the matter by telephone with Hale, were the procuring cause of the sale. Slight services of a broker have been held by this Court, under appropriate circumstances, sufficient to constitute the procuring cause. In *Keener v. Harrod, supra,* this Court held that the mere introduction of the purchaser to the owner, or the disclosure of his name, could under appropriate circumstances constitute the procuring cause. See also *Schwartze v. Yearly,* 31 Md. 270, 277 (1869); *Blake v. Stump,* 73 Md. 160, 168, 20 A. 788 (1890). A letter from the broker to the purchaser enclosing a prospectus of the property was likewise held sufficient to constitute the procuring cause. See *Baltimore Car Wheel Co. v. Clark, supra.*

We hold that the trial judge was right in submitting the case to the jury but his ruling that there was no legally

sufficient evidence to support the finding of the jury and the granting of a motion for judgment n.o.v. was in error.

*Judgment reversed, and entered in favor of the appellant against the appellee in the amount of $670, with costs.*