## SANDERS ET AL. *v.* DEVEREUX

[No. 168, September Term, 1962.]

226

*Decided April 3, 1963.*

The cause was argued before BRUNE, C. J., and HENDERSON, HAMMOND, HORNEY and SYBERT, JJ.

*Arthur J. Hilland*, with whom was *Ferdinand J. Mack* on the brief, for the appellants.

*William A. Volkman, Jr.*, for the appellee.

SYBERT, J., delivered the opinion of the Court.

This is an appeal by the sellers of real estate from a judgment of the Circuit Court for Mongtomery County in favor of a real estate broker for a commission in the amount of $3,928.75, which the broker claimed for being the "procuring cause" of the sale involved.

In 1959 Mr. and Mrs. J. Melford Sanders, the defendants below and appellants here, were the owners of Melwood Farm, containing 148 acres, located near Olney in Montgomery County. In the spring of that year they erected a sign on the side of the road in front of their farm, which read "For Sale by Owner" and gave their telephone number and name and an invitation to contact the owner, directly or through brokers. At the same time a brochure and letter were prepared, describing the real estate, which the owners sent to between 100 and 150 brokers in the Washington and Baltimore areas. The letter stated that the farm was being offered for sale either in its entirety, or on the basis of "prices of $65,000 for the Manor House and 25 surrounding acres with the many buildings thereon plus $775.00 per acre for the balance of the land", and that a "5% commission will be paid".

According to the testimony of Mr. Sanders, numerous brokers visited the farm in response to the letter and brochure, many of them accompanied by prospective customers. One of these brokers was John R. Devereux, the plaintiff-appellee. He had learned about the property through one of his salesmen, Sidney S. Stabler, Jr., who some time prior to becoming employed by Devereux had received copies of the brochure and letter from the appellants and also had contacts with them which he maintained after his employment.

On May 17, 1959 Devereux and Stabler, pursuant to prior arrangements made by them, met Dr. and Mrs. Mitchell, Dr. Creswell, and two other gentlemen and their wives who were "in some religious sect", at Melwood Farm, and the entire party inspected all the buildings except the barn. They met Mr. and Mrs. Sanders, and Mr. Sanders showed them through the property. On May 20, 1959 appellants received a letter from Devereux listing Dr. and Mrs. Mitchell and Dr. Creswell as "prospective buyers" of the farm. Mr. Sanders testified that he knew they were the same persons whom Devereux and Stabler had brought out on May 17. About nine days later, Devereux and Stabler, in accordance with arrangements made at the request of Dr. Mitchell, met Mrs. Mitchell and certain county and state health, fire, zoning and licensing officials on the property for an inspection to determine what

228

expenditures would be necessary in order to comply with state and county regulations so that the farm could be operated as a rest home.

Stabler testified he gave Dr. Mitchell one of the brochures showing the acreage of the property, told him several times about the price, and later gave him drafts of a contract form listing the price and terms. Devereux stated that after the inspection was made, and a report was submitted by an official of the County health department, he drew up a number of contracts in an effort to find one that might be acceptable to Dr. Mitchell. He said he knew one of the contracts was given to Dr. Mitchell, who turned it over to a Mr. Bartley, from whom he expected to get part of his financing. However, neither this contract nor any of the other proposed contracts was offered in evidence.

Devereux testified that in June, 1959, Mr. Sanders called him and told him that he had a contract on the property and had taken it off the market. He said he told the owner to let him "get back in the picture" if anything happened to the contract, and that Mr. Sanders replied, "I will let you back in the picture, because I think the doctors were very interested." Devereux said that in the middle of August, 1959, Mr. Sanders called and told him the property was again on the market and asked him to "please get after the doctors again and submit the property to them and see if they were still interested". Immediately thereafter Devereux called Dr. Mitchnell's office, and, although the doctor was not in, he testified that he informed the doctor's secretary that the property was again on the market, and requested that she have Dr. Mitchell call him when he returned. Devereux stated that Mrs. Mitchell, the wife of Dr. Mitchell, called back instead of the doctor. He said he knew Mrs. Mitchell as an independent real estate broker. Although the exact nature of this call was not brought out explicitly in the testimony, Devereux said he waited "a couple of days" for Dr. Mitchell to get in touch with him direct, without result, and he then testified, "* * * I then called Mr. Sanders and I said 'I have re-presented the property to the doctors, and they haven't called me back, and I want you to protect me' and Mr. Sanders told me he had been

in the automobile business a long time and he knew what I was getting at—the fact that they would go around me, or in some way try to eliminate me." Mr. Sanders himself testified that Devereux told him Mrs. Mitchell was making an effort to get one-half of the commission. In fact, as far as the record extract shows, neither Mr. Sanders nor Mrs. Sanders (who also testified) denied or disputed any of the testimony of Devereux or of Stabler, although Mr. Sanders did state that he never promised to protect Devereux's commission.

On October 9, 1959 appellants entered into a contract with one Mary Folsom Bacon whereby they agreed to sell 40 acres of their farm for the sum of $78,575.00, which figure appears to have been reached by using the same prices as those indicated in the letter originally circulated to brokers by the appellants. The contract showed on its face that the purchaser, Mary Folsom Bacon, executed it "for a corporation to be designated at the time of settlement", and provided that settlement was to be within 90 days from October 10, 1959, and that a commission amounting to 5% of the sales price was to be divided equally between Korzendorfer Realty, Inc., a real estate agency on whose printed form the contract was drafted, and Mary A. Mitchell, the wife of Dr. Mitchell. One of the clauses in the contract read:

> "The brokers and purchasers jointly and severally agree that in the event there is a claim for sales commission by any other broker on account of this sale, the brokers and purchasers agree to defend any action in court or otherwise at no expense to seller, and pay any amount for which seller is held liable, including costs."

Settlement was held on January 6, 1960, at which time the title company which handled the transaction paid one-half of the commission to Korzendorfer Realty, Inc., amounting to $1,964.37, and the other one-half to Mrs. Mitchell, who applied $1,800.00 thereof to the purchase price of the property and received a check for the balance of $164.38. The grantee on the recorded deed was Melwood Farms, Inc., a

Maryland corporation chartered on November 27, 1959. The officers of the corporation included Dr. Mitchell as president and Dr. Creswell and H. J. Korzendorfer of Korzendorfer Realty, Inc., as vice-presidents. A rest home was established on the property under a license issued to Melwood Farms, Inc., on the application of Dr. Mitchell as president, and Mary Folsom Bacon became its superintendent.

There is nothing in the record extract to indicate that Korzendorfer Realty, Inc., took any part in the negotiations leading to the sale of the property involved in this case. Devereux testified that while Mrs. Mitchell was an independent broker at the time of the sale, she had worked for Korzendorfer some years previously.

Because no commission was paid to him, Devereux filed suit against the sellers, claiming that 5% of the purchase money was due him as the procuring cause of the sale. The defendants filed general issue pleas. At the close of the plaintiff's case and at the close of all the evidence the defendants moved for a directed verdict on the grounds (1) that there had been no showing that the plaintiff was the procuring cause of the sale and (2) that the evidence showed that there were a number of competing brokers and that the sellers merely dealt with the first one who presented an acceptable contract, having remained completely neutral as among all of the brokers. Both motions were denied.

Appellant requested the court to instruct the jury "that an owner who lists property for sale on a non-exclusive basis with two or three real estate brokers may accept the first satisfactory contract presented to him and pay the commission to the broker presenting that contract, so long as the owner has remained neutral as between the competing brokers. In such a situation the owner incurs no liability to other competing brokers." The request was denied, the trial judge stating that he did not believe the instruction to be the law of this State as he understood it. The jury returned a verdict in favor of the broker against the sellers for an amount equaling 5% of the sale price.

On this appeal the appellants contend that the trial court

erred in failing to grant their motion for a directed verdict, and in denying the requested instruction.

In Maryland, Code (1957), Art. 2, Sec. 17, lays down the tests which are to be applied in cases such as the one before us. This Court has said that that Section was passed to settle the question as to when, in the absence of a special agreement between an owner and a broker, the broker is entitled to a commission. *Brown v. Hogan,* 138 Md. 257, 113 Atl. 756 (1921). The tests so established are whether the broker was employed by the owner and whether he was the procuring cause of the sale. See *Steele v. Seth,* 211 Md. 323, 328, 127 A. 2d 388 (1956), where Sec. 17 is quoted in pertinent part, and cases there cited. With respect to employment, this may be implied from the conduct of the parties, there being no necessity for either an express or a written contract. See Sec. 17, *supra; Leimbach v. Nicholson,* 219 Md. 440, 446, 149 A. 2d 411 (1959) ; *Glaser v. Shostack,* 213 Md. 383, 387, 131 A. 2d 724 (1957) ; *Steele v. Seth, supra; Heslop v. Dieudonne,* 209 Md. 201, 206, 120 A. 2d 669 (1956) ; *Brown v. Hogan, supra.* The fact that Devereux was employed by the appellants is not in dispute here. Essentially, in determining whether the trial court properly refused to grant a directed verdict in favor of the appellants, the question is whether there was sufficient evidence from which the jury could find that the appellee was the procuring cause of the sale.

In order for a broker to establish that he is the procuring cause of a sale of real estate, in the absence of a specific contract, the evidence must show or permit the inference that the sale was accomplished as the result of his action in discovering the purchaser, acquainting him with the property and referring him to the seller for further negotiations. *Bearman v. Roland Park Realty Co.,* 218 Md. 515, 147 A. 2d 697 (1959) ; *Steele v. Seth, supra; Buchholz v. Gorsuch,* 144 Md. 62, 124 Atl. 389 (1923) ; *Balto. Car Wheel Co. v. Clark,* 131 Md. 513, 104 Atl. 357 (1917). Although it is not sufficient that the broker has merely planted the seed from which the harvest was reaped, *Leimbach v. Nicholson, supra* (at p. 446 of 219 Md.), and cases cited, on the other hand the owner cannot take advantage of a broker's services and make the sale him-

self, or through another broker, so as to deprive the broker of his commission when he has introduced a prospective buyer to the seller and negotiations have progressed to a point where success seems imminent. *Steele v. Seth, supra; Heslop v. Dieudonne, supra; Buchholz v. Gorsuch, supra; Jones v. Adler,* 34 Md. 440 (1871) ; *Arthur H. Richland Co. v. Morse,* 169 F. Supp. 544 (D. Md. 1959).

In *Steele v. Seth, supra,* Steele, the owner of a motel, discharged Seth, a real estate broker, after the latter had produced an interested prospective buyer for the motel but before any deal was closed. Prior to dropping Seth, Steele gave an exclusive agency to another broker, who arranged a meeting with Seth's prospect and Steele, all of which was concealed from Seth. After Seth's discharge, the second broker continued negotiations with the prospect, who signed a contract some six weeks later and ultimately took title to the motel. In Steele's appeal from a judgment in favor of Seth in the latter's suit for commissions, Steele's principal contention was that the evidence was insufficient to warrant the submission to the jury of the question whether or not Seth had procured a purchaser ready, willing and able to purchase the property. After a careful review of the facts, Chief Judge Brune, for this Court, pointed out that the actions of the owner, the prospect and the second broker had prevented Seth from participating in the final negotiations which culminated in the sale of the motel, and that the secretiveness and deception which preceded or accompanied Seth's dismissal and the employment of the second broker were sufficient to warrant a finding of bad faith in the revocation of Seth's agency. After pointing out that the questions of whether or not Seth's prospect was ready, willing and able to make the purchase and whether or not Seth was the procuring cause of the sale had been squarely presented to the jury, Judge Brune stated that the sufficiency of the facts in the case to show that Seth was the procuring cause of the sale was supported by a line of Maryland cases, which he cited. After citing *Warshawsky v. Traub,* 156 Md. 597, 144 Atl. 833 (1929), as authority for the proposition that the discharge of Seth and the consummation of the sale through another broker would

not defeat Seth's right to commissions if he was the procuring cause of the sale, Judge Brune made the following quotation from *Jones v. Adler, supra*:

> "It is well settled, if the agent introduces or discloses the name of the purchaser, and such introduction or disclosure is the foundation upon which negotiations are begun and the sale effected, he will be entitled to commissions, and this too although in point of fact the sale may have been made by the owner. In other words, he cannot avail himself of the services, and by making a sale through information derived from the agent, deprive the latter of his commissions."

Judge Brune's opinion then reached the following conclusion: "Following the rule of this case [*Jones v. Adler*], we hold that Seth, having been employed as a broker by the Steeles to sell their motel and having produced in good faith a purchaser who was accepted by the employers, is entitled to his commissions, despite the fact that he did not take part in the final negotiations because of the actions of the employers and others."

While there are some differences between the facts in the *Steele* case and those in the instant case, we think there is enough similarity in the two cases to require the application here of the principles laid down in *Steele*. See also *Cowal v. Marletta*, 216 Md. 222, 139 A. 2d 712 (1958). As previously noted, the employment of Devereux by the appellants is not disputed. Likewise, there is no question but that Devereux brought Dr. Mitchell and his party to the attention of the appellants and inspected the farm with them twice, and it was not denied that Devereux or his employee, Stabler, discussed prices with Dr. Mitchell, and gave him a draft of a contract listing price and terms. There was evidence from which the jury could reasonably infer that a sale to the doctors, or their nominee, was likely after the authorities had approved the use of the farm as a rest home, which occurred a short time before the withdrawal of the property from the market; that appellants specifically reemployed Devereux as their agent

when Mr. Sanders called him after the property was again placed on the market and asked him to submit the property to the doctors, and spoke of their interest; that Mrs. Mitchell informed Devereux that she desired one-half of the commission (which Mr. Sanders admitted he learned from Devereux), and that her failure to obtain a commitment from Devereux resulted in the freezing of the latter out of further negotiations; that Mrs. Mitchell and Korzendorfer, while purporting to represent the appellants belatedly as agents in the sale, were in reality a part of or identified with the purchasing group; that the sellers were aware of all this, as was evidenced by Mr. Sanders' explanation from the witness stand that he insisted on the inclusion of the indemnity clause in the contract of sale because Devereux had told him that "Mrs. Mitchell was making an effort to get one-half of the commission, and that brought the question to my mind when the party did make a sale to Dr. and Mrs. Mitchell or some of the parties who were interested in it there might be some contest between real estate men, and I had just enough experience so I wanted things written down in black and white"; and that the circumstances mentioned amounted to a legal fraud upon the rights of Devereux, in which the appellants participated by paying the commissions to others.

The question whether or not a broker was the procuring cause of a sale is ordinarily left to the jury for decision, and it should not be withdrawn from their consideration unless the evidence admits of no reasonable inference that the agreement of sale was the result of the broker's service. *Cowal v. Marletta, supra; Steele v. Seth, supra; Hill v. Iglehart,* 145 Md. 537, 547, 125 Atl. 843 (1924); *Buchholz v. Gorsuch, supra;* 2 Mechem, *Agency* (2d ed.), Secs. 2435, 2442; Restatement, *Agency* (2d ed.), Sec. 448 e (especially example 7). Cf. *Lewis v. McDonald,* 120 N. W. 207 (Neb. 1909). We conclude that on the facts in the record before us the question whether Devereux was the procuring cause of the sale was properly submitted to the jury.

The appellants, however, sought to avoid the effect of the "procuring cause" principle by requesting an instruction that

would have required application of a rule which certain other jurisdictions have adopted, and which has been stated as follows: "[w]here several brokers are openly and avowedly employed, so that each can be said to have undertaken the employment on that basis, * * * the entire duty of the principal is performed by remaining neutral between them, and * * * he has a right to sell to the buyer who is first produced by any of them, and to pay that broker the commission, without being called upon to decide which of the several brokers was the procuring cause of the sale." 2 Mechem, *Agency* (2d ed.), Sec. 2457 and cases cited therein on p. 2059, n. 43. See also *Reed v. Taylor*, 322 P. 2d 147, 150-151 (Wyo. 1958) ; *First Nat. Realty Corp. v. Blackwell*, 77 A. 2d 319 (D.C. Mun. App. 1950) ; *Rieffer v. Hollingsworth*, 52 A. 2d 632 (D.C. Mun. App. 1947) ; *Carrier Corp. v. Bedworth*, 4 A. 2d 277 (N. J. Eq. 1939) ; and Walker, *American Law of Real Estate Agency* (2d ed.), pp. 370-387. Appellants argue that although the "procuring cause" test applies where "all the brokers * * * are employed independently, so that competition among them is not a feature of the undertaking * * *" (see 2 Mechem, *Agency* (2d ed.), Sec. 2457), the test suggested by them should apply in the case of an open listing, where competition is a feature of the undertaking. Therefore, appellants urge, since this case involved an open listing, and Devereux did not "produce" a buyer (equating "produce" with actually effecting a sale), he was not as a matter of law entitled to a commission on the sale.

It is recognized as a prerequisite in order for a principal to be entitled to the benefit of this rule in a case where two *competing* brokers each make a claim for commissions on the sale of a piece of property, that the principal must in fact have remained neutral as between the competing brokers, "and he certainly must not knowingly permit, much less aid in or connive at, the appropriation by one man of the rewards of what was really another man's efforts." 2 Mechem, *Agency* (2d ed.), Sec. 2458, p. 2061, n. 45 and the cases there cited. This would appear to be but another aspect of the oft-stated rule (under the procuring cause cases) that a principal can-

not, after the broker has produced the purchaser, deprive him of his commission by concluding the sale either in person or through another broker. See *Steele v. Seth, supra; Heslop v. Dieudonne, supra.* However, in the light of our findings in this case, we think it is unnecessary to decide whether or not the suggested rule should be applied in an appropriate case in this State, even if it were assumed that such a rule could validly be adopted or applied in view of the provisions of Code (1957), Art. 2, Sec. 17, *supra.* Even if the suggested rule were in force here, the absence of neutrality on the part of the appellants among the brokers involved would constitute an exception to the rule, and thus the rule would be inapplicable in the instant case.

For the reasons stated, we hold that the appellants' motions for a directed verdict, and their requested instruction, were properly denied.

*Judgment affirmed; costs to be paid by appellants.*