OHLENDORF ET UX. *v.* SHAW and MANNING-
SHAW REALTY, INC.

[No. 255, September Term, 1970.]

*Decided February 4, 1971.*

The cause was argued before HAMMOND, C. J., and
BARNES, McWILLIAMS, FINAN, SINGLEY, SMITH and
DIGGES, JJ.

*Bernard J. Ohlendorf* for appellants.

No brief filed on behalf of appellee.

SINGLEY, J., delivered the opinion of the Court.

This is a dispute over real estate commissions, involving little that is new. In the summer of 1968, Mr. and Mrs. Ohlendorf entered into a listing contract with Manning-Shaw Realty, Inc., (Manning-Shaw), for the sale of their property at 4008 Dorchester Road. The contract, which by its terms expired on 14 February 1969, provided that commissions would be payable,

> "* * * if, during the term of this contract or any extension thereof said Manning Shaw Realty, Inc. produces a purchaser to purchase said property at the last price agreed upon between the owner and Manning Shaw and sale is consummated; or if said property is sold directly by the owner or through Manning Shaw or others during the term of this contract or any extension thereof or within six months thereafter to anyone who, with the knowledge of the owner, and such purchaser having not initially been owner-obtained, inspected or made inquiry or negotiated about the property. * * *"

Ohlendorf said the price he stipulated was $13,500.

On 17 June 1969, title to Dorchester Road was conveyed to Joe Clifford Gaddy and Maenonie Gaddy who had purchased the property for $13,900, subject to an annual ground rent of $120. Real estate commissions, calculated in the fashion provided in the listing contract, amounted to $894. Manning-Shaw applied the Gaddys' deposit of $560 in partial satisfaction of commissions, and demanded an additional $334 from the proceeds of sale.[1] Ohlendorf not only rejected this demand, but sought a refund of the $560, and $334 was ultimately retained in escrow by mortgagee's attorney, who brought an action

---

1. The September contract recited the receipt of a deposit of $600, but Shaw testified that only $560 had been paid in cash. For some unexplained reason, the January contract also fixed the deposit at $600, but the Gaddys received a credit for a $650 deposit at settlement. Both contracts are discussed, *infra*.

of interpleader in the Circuit Court of Baltimore City against the Ohlendorfs, Manning-Shaw, and Warren S. Shaw, its president. From an order directing the payment of the $334 to Shaw, as president of Manning-Shaw, the Ohlendorfs have appealed.

In mid-September, 1968, the Ohlendorfs had received from Manning-Shaw a contract signed by the Gaddys for the sale of the house, subject to the ground rent, for $11,-900. The Ohlendorfs rejected the contract, because the minimum price they were willing to accept was $13,500. The contract was returned to the Ohlendorfs by Shaw, who had increased the contract price from $11,900 to $13,900, by interlineation. At Shaw's request, the Ohlendorfs initialled the change, and returned the contract to him. When the Gaddys' approval of the change was not forthcoming, the Ohlendorfs commenced to apply pressure on Manning-Shaw.

What happened next is not too clear. Irked by Manning-Shaw's delays, the Ohlendorfs, on 2 January 1969, entered into a new contract with the Gaddys. The sale price for the leasehold remained at $13,900, subject to FHA financing. The sellers unilaterally agreed to pay Manning-Shaw a 3% commission on the sale price, plus one-fourth of the annual ground rent of $120, as the listing contract provided, should they produce a purchaser. On the day the contract was signed, Ohlendorf sent by registered mail a letter to Shaw, terminating the agency. Shaw refused to accept the letter. On 7 January, Shaw wrote to the Ohlendorfs, suggesting that the contract of 7 September be cancelled and the Gaddys' deposit be refunded, because the Gaddys had not been able to arrange financing. Ohlendorf did not reply, but instead, arranged for the financing which made it possible for the Gaddys to purchase the house.

The Ohlendorfs advance many reasons—none of which we find persuasive, for reasons which we shall indicate —why the order of the Circuit Court should be reversed. The simple facts are that it was Manning-Shaw which produced the Gaddys on 7 September 1968 and it was the

Gaddys who acquired title on 17 June 1969. It will be remembered that under the listing contract, which by its terms expired on 14 February 1969, the Ohlendorfs obligated themselves to pay a commission

> "* * * if during the term of this contract * * * Manning Shaw Realty, Inc. produces a purchaser to purchase said property * * * or if said property is sold directly by the owner * * * during the term of this contract * * * or within six months thereafter to anyone who * * * having not initially been owner-obtained, inspected or made inquiry or negotiated about the property."

The Ohlendorfs argue that Manning-Shaw never produced an acceptable offer from the Gaddys. If we concede that it did not, the fact remains that Manning-Shaw produced the Gaddys, who signed a contract before the listing contract expired and settled for the house within six months after 14 February. Under our decisions this is more than enough to entitle Manning-Shaw to commissions, *Sanders v. Devereux,* 231 Md. 224, 189 A. 2d 604 (1963) ; *Leimbach v. Nicholson,* 219 Md. 440, 149 A. 2d 411 (1959) ; *Cowal v. Marletta,* 216 Md. 222, 139 A. 2d 712 (1958) ; *Steele v. Seth,* 211 Md. 323, 127 A. 2d 388 (1956). Compare *Robert H. Kent & Co. v. Burton,* 248 Md. 693, 237 A. 2d 736 (1968).

The Ohlendorfs argue that the lower court was in error in excluding Gaddy's affidavit that Ohlendorf, and not Manning-Shaw, had obtained the financing; in excluding the affidavit of Mrs. Emma L. King, an employee of the mortgagee, that Manning-Shaw had not pursued the financing, and evidence that Shaw's brokerage license had been revoked on 14 January 1969. Even apart from the question of the admissibility of the affidavits, see Maryland Rules, Chapter 400, these matters were wholly irrelevant. Under the listing contract, Manning-Shaw undertook to sell the property, not to finance it. An agent's entitlement to commissions hinges on whether he was li-

censed when he earns them, not when he receives them, Code (1957, 1968 Repl. Vol.) Art. 56, § 228; *Zalis v. Blumenthal,* 254 Md. 265, 254 A. 2d 692 (1969) ; *Thorpe v. Carte,* 252 Md. 523, 250 A. 2d 618 (1969). Consequently, the motions by which the Ohlendorfs attempted to raise this issue would have been denied, had they been procedurally correct.

*Order affirmed, costs to be paid by appellants.*

